**PENTAGEN TECHNOLOGIES INTERNATIONAL LIMITED, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 98 CIV. 1090(JES).**

United States District Court, S.D. New York.

June 29, 2000.

Trachtenberg & Rose, LLP, for Defendants International Business Machines Corporation, Lockheed Martin Corporation, PRC Inc. and AT & T Company, New York, NY, Leonard A. Rodes, Barry J. Friedberg, Of Counsel.

McKenna & Cuneo, L.L.P., for Defendants International Business Machines Corporation, Lockheed Martin Corporation, and PRC Inc., Washington, D.C., Frederick M. Levy, Of Counsel.

Kevin T. O'Reilly, for Defendant AT & T Company, Liberty Corner, N.J.

Wilson, Elser Moskowitz, Edelman & Dicker LLP, for Defendants Express Company Secretaries Limited, Jordans & Jordan & Sons Limited, Jordan Group, Ltd., Davies Arnold & Cooper, and George Menzies, New York, NY, Thomas A. Leghorn, Of Counsel.

Steptoe & Johnson, for Defendants Steptoe & Johnson and J. William Koegel, Jr., Washington, D.C., J. William Koegel, Jr., Of Counsel.

Joel Z. Robinson & Co., for Plaintiffs, New York, NY, Joel Z. Robinson, Of Counsel.

Mary Jo White, United States Attorney for the Southern District of New York, New York, NY, Rachel D. Godsil, Assistant United States Attorney, Of Counsel.

Owen & Davis, for Defendants CACI International Inc., CACI Systems Integration, Inc., CACI, Inc.-Federal, Steptoe & Johnson and J. William Koegel, Jr., New York, NY, James M. Davis, Of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Pentagen Technologies International Limited ("Pentagen") and Russell D. Varnado (collectively "plaintiffs") bring the instant action alleging violations of the Federal False Claims Act ("False Claims Act") and abuse of process by defendants United States of America ("United States"), E.F. Brasseur ("Brasseur")[1] (collectively "United States defendants"), CACI International Inc. ("CACI Interna-

---

1. On October 1, 1998, the United States Attorney for the Southern District of New York certified that actions taken by Defendant Brasseur relevant to this action were within the scope of his employment as Deputy Chief of Staff for Corporate Information, United States Materiel Command. Accordingly, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1) (2000) ("FTCA"), this action is deemed to be against the United States, and the United States is substituted as party defendant for defendant Brasseur. *See*

also 28 C.F.R. § 15.3(a) (2000). In any event, the FTCA precludes all claims against the United States, defendant Brasseur, and other relevant employees of the United States (including United States Attorneys and their assistants involved in litigating these claims) for intentional tort claims including those based upon abuse of process. *See* 28 U.S.C. § 2680(h); *Gray v. Bell*, 542 F.Supp. 927, 933 (D.D.C.1982), *aff'd*, 712 F.2d 490 (D.C.Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

tional"), CACI Systems Integration, Inc. ("CACI Systems"), CACI, Inc.—Federal ("CACI Federal"), International Business Machines Corporation ("IBM"), Lockheed Martin Corporation ("Lockheed Martin"), AT & T Company ("AT & T"), PRC Inc. ("PRC"), I–Net Inc. ("I–Net"), Statistica, Inc. ("Statistica"), Express Company Secretaries Limited ("Express"), Jordans & Jordan & Sons Limited ("Jordan"), Jordan Group LTD ("Jordan Group"), Steptoe and Johnson ("Steptoe"), J. William Koegel, Jr., Esq., Davies Arnold & Cooper ("Davies"), and George Menzies, Esq. ("Menzies") (collectively "non-United States defendants"). United States defendants and non-United States defendants have moved to dismiss plaintiffs' complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, during the pendency of these motions, plaintiffs have requested leave to file a Second Amended Complaint which includes several new causes of action based upon evidence they claim was recently discovered. Defendants have opposed such request by arguing that all new claims asserted by plaintiffs must be dismissed and, accordingly, the proposed amendment would be futile. For the reasons set forth herein, this action is dismissed in its entirety with prejudice and plaintiffs' request to amend their complaint is denied.

## BACKGROUND

This action, like approximately ten other actions previously brought by plaintiffs, stems from Pentagen's failure to procure a substantial contract to provide software to the United States Army ("the software contract"). Most relevant here, after the software contract was awarded to several other contractors and subcontractors, many of them defendants in the instant action, plaintiffs brought forward an action against such contractors and subcontractors under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* In that action which was before Judge Robert L. Carter of this Court ("the first *qui tam* action"), plaintiffs alleged, *inter alia*, that (1) such contractors and subcontractors had without plaintiffs' permission submitted a proposal to the Army that required the use of a software application owned by plaintiff ("Mentix"); and (2) defendants, upon being awarded the software contract, were generally failing in their performance obligations under such contract.[2] Judge Carter dismissed the first *qui tam* action for lack of subject matter jurisdiction on November 21, 1995.[3] *See United States ex rel. Pentagen Tech. Int'l Ltd. v. CACI Intern. Inc.,* No. 94 Civ. 2925(RLC), 1995 WL 693236 (S.D.N.Y.).

In the instant action, plaintiffs allege that defendants' conduct while litigating the *qui tam* actions constituted an abuse of due process under state law and was in violation of the False Claims Act.[4] Specifically, with respect to the United States defendants, plaintiffs allege that the United States improperly (1) filed an *amicus*

---

**2.** Plaintiffs' claims alleging that defendant CACI had violated its copyright and trademark in Mentix were previously dismissed in *CACI Int'l, Inc. v. Pentagen Tech. Int'l, Ltd.,* No. 93–1631–A. slip op. (E.D.V.A. June 16, 1994) ("the *Copyright Action* ").

**3.** After plaintiffs' request for reconsideration by Judge Carter was denied, plaintiffs subsequently filed another *qui tam* action alleging similar claims before Judge Robert W. Sweet of this Court. Judge Sweet dismissed this action by opinion dated August 15, 1997. *See United States ex rel., Pentagen Tech. Int'l Ltd. v. CACI International Inc., et al.,* No. 96 Civ. 7827(RWS), 1997 WL 473549 (S.D.N.Y.) ("the second *qui tam* action"). Plaintiffs' motion

for reargument of this dismissal was denied by Judge Sweet on November 19, 1997. *See United States ex rel., Pentagen Tech. Int'l Ltd. v. CACI Int'l. Inc.,* No. 96 Civ. 7827(RWS), 1997 WL 724553 (S.D.N.Y.), *aff'd,* 172 F.3d 39, 1999 WL 55259 (2d Cir.1999).

**4.** While plaintiffs' Amended Complaint specifically lists only claims of "abuse of process of the courts," the Court liberally construes the complaint to include a False Claims Act violation, particularly in light of plaintiffs' allegations in the body of the Amended Complaint that defendants had "obligations" under the False Claims Act which they did not fulfill. *See* Amended Complaint dated April 3, 1998 ("Amend.Cmplt.") at ¶¶ 22–25.

*curiae* brief in the first *qui tam* action; (2) colluded with non-performing government contractor defendants in their defense of the first and second *qui tam* action; (3) prohibited plaintiffs from meeting with members of the Executive Branch to assist them in their prosecution of the first and second *qui tam* actions; and (4) permitted defendant Brasseur, a Government employee, to meet with defendant contractors and provide a witness statement ("the Brasseur statement") for use in related litigation proceedings pending in the United Kingdom ("the U.K. Proceeding"). *See* Amend. Cmplt. at ¶¶ 41, 46. Similarly, plaintiffs claim that the remaining defendants colluded with the United States in preparing the aforementioned *amicus curiae* brief and the Brassuer statement, and in otherwise seeking the United States' assistance in preparing for their defense of the *qui tam* actions. *See id.* at ¶¶ 42–45.

## DISCUSSION

### A. *Personal Jurisdiction*

Defendants CACI Systems, CACI International, CACI Federal, Davies, Menzies, Express, Jordan and Jordan Group each move to dismiss plaintiffs' complaint pursuant to Fed. Rule Civ. Proc. 12(b)(2) for lack of personal jurisdiction. Here, where the parties have not engaged in discovery, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *See Jazini v. Nissan Motor Company, Ltd.,* 148 F.3d 181, 184 (2d Cir.1998) (citations and quotations omitted).

With respect to defendants CACI Systems, CACI International, Express, Jor-

dan, and Jordan Group, plaintiffs' Amended Complaint pleads absolutely no factual allegations detailing the basis for this Court's jurisdiction over such defendants. Moreover, plaintiffs have entirely failed to respond to such defendants' arguments that the Court lacks personal jurisdiction over them. In these circumstances the Court must dismiss plaintiffs' action as to such defendants.

As to defendant CACI Federal, plaintiffs' complaint alleges that such defendant is authorized to do business in New York and is presently found in the State of New York. *See* Amend. Cmplt. at ¶ 6. Similarly, plaintiffs plead that law firm Davies is comprised in part of New York attorneys, namely its partner defendant Menzies, who allegedly is licensed to practice in New York and met with plaintiff Pentagen in New York at times relevant to this action. *See id.* at ¶ 15. While defendants argue that such allegations are either inaccurate or legally insufficient to assert personal jurisdiction over them, at this early stage of litigation they constitute *prima facie* jurisdictional allegations sufficient to survive a motion to dismiss.[5]

### B. *False Claims Act*

The False Claims Act empowers the United States to recover damages from those who knowingly make false claims for payment upon the United States. *See* 31 U.S.C. § 3729(a); *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 16 (2d Cir.1990). As noted by the Supreme Court, a "claim against the Government normally connotes a demand for money or for some transfer of public property." *United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958) (internal quotation and citation

---

**5.** Defendants' argue that because the parties have engaged in discovery in prior actions, plaintiffs allegations of jurisdiction must be factually supported. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). However, this Court stayed discovery during the pendency of the

instant motions, and defendants have not provided the Court with evidence that plaintiffs were accorded an adequate opportunity to develop a factual basis for their jurisdictional allegations. In any event, plaintiffs' claims against all defendants are dismissed on other grounds, as discussed *infra.*

omitted). Accordingly, the terms "claim against the government ... must be carefully restricted, not only to their literal terms but to the evident purpose of Congress in using those terms, particularly where they are broad and susceptible to numerous definitions." *Id.*

To encourage reporting of false claims, any person may commence a civil action on behalf of the United States for a violation of the False Claims Act. *See* 31 U.S.C. § 3730(b). Such person must serve a copy of the complaint upon the United States, which may proceed with the action and take "primary responsibility" for its prosecution. *See* 31 U.S.C. § 3730(c)(1). It may also decline to proceed with the action, whereupon the originator of the suit may proceed as a *qui tam* plaintiff. *See id.* Should the Government decline to proceed with the action, it is still entitled to be served with copies of all pleadings in the action and may upon good cause intervene at a later date. *See id.* at § 3730(c)(3). In either case, if the action is ultimately successful, the *qui tam* plaintiff is entitled to a portion of the recovery. *See id.* at § 3730(d).

■ As to the United States defendants, plaintiffs claims under the False Claims Act must be dismissed as the United States has never waived its sovereign immunity with respect to such suits. The United States is immune from suit unless it has unequivocally waived its sovereign immunity by statute. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). No such waiver has been promulgated by Congress and, to the contrary, the False Claims Act provides that any person who violates the Act will be "liable to the United States Government." *See* 31 U.S.C. § 3729(a); *see also Juliano v. Federal Asset Disposition Ass'n,* 736 F.Supp. 348, 352, 353 (D.D.C. 1990) ("The Court is aware of nothing in the Act that allows a private individual to sue selected federal agencies to recover money from the United States, and to reap a sizable profit in the process."), *aff'd.,* 959 F.2d 1101, 1992 WL 76922 (D.C.Cir.1992).[6]

■ As to the non-United States defendants, plaintiffs' claims must be dismissed because the False Claims Act provides no private right of action for litigation misconduct during the pendency of a *qui tam* action. Four factors must be considered in determining whether a statute implies a private right of action: (1) whether the plaintiff is part of the class for whose benefit the statute was enacted; (2) whether there is any indication of legislative intent that would either favor or oppose creation of a private remedy; (3) whether implication of a private remedy is consistent with the under-

**6.** While plaintiff cites several cases for the proposition that the United States may not interfere with the prosecution of a *qui tam* action after it has declined to prosecute such action, these cases are readily distinguishable from the instant action. For example, *Bush v. United States,* 13 F. 625, 626 (C.C.D.Or. 1882), and *United States ex rel. Smith v. Gilbert Realty Co.,* 9 F.Supp.2d 800, 803 (E.D.Mich.1998), both involved properly brought *qui tam* actions in which *qui tam* plaintiffs alleged only that the Government had failed to pay them a part of the damages due to them under section 3730(d). Similarly, plaintiff's reliance on Judge Carter's opinion in *U.S. Dept. of Defense v. CACI Int'l, Inc.,* 885 F.Supp. 80 (S.D.N.Y.1995) is misplaced, as this decision only provided that the Government could not keep virtually all litigation materials under seal during the pendency of a *qui tam* action without any showing of good cause. *See id.* at 82. Plaintiffs' reliance on this decision is particularly unwarranted given Judge Carter's subsequent holding during the course of the first *qui tam* action that "nothing in the [False Claims Act's] language prohibits the government from communicating with the defendants or submitting an amicus curiae brief on their behalf ... [and] communications between defendants and the [G]overnment are common in an action where the Government has not intervened." *See U.S. Dep't of Defense v. CACI Int'l Inc.,* 953 F.Supp. 74, 78 (S.D.N.Y.1995). This decision, of course, dealt with the exact same conduct that plaintiff alleges was improper in this action.

lying purposes of the statute; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate to infer the existence of a federal cause of action. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

The second factor, legislative intent, is central in such analysis with the other factors looked upon as "proxies for legislative intent." *DiLaura v. Power Authority of New York*, 982 F.2d 73, 77–78 (2d Cir. 1992) (citations omitted). When a statute fails to provide for a private right of action, legislative intent is determined by reference to "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." *Schuloff v. Queens College Foundation, Inc.*, 994 F.Supp. 425, 427 (E.D.N.Y.1998) (citations omitted), *aff'd*, 165 F.3d 183 (2d Cir.1999).

The False Claims Act specifically provides for private actions based upon the making of a false claim for payment upon the United States. Beyond creating this type of action, the Act provides a specific and detailed procedure for how such actions are to proceed, either with or without Governmental involvement. *See* 31 U.S.C. § 3730. No other mention of a private action is made by the statute, and, in particular, no mention is made of a private action based upon litigation misconduct during the pendency of a False Claims Act proceeding. In these circumstances, this Court cannot infer the right of a party to instigate such an action. Indeed, as the Supreme Court has noted, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Meghrig v. KFC Western, Inc.*, 516 U.S.

479, 488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (citations omitted).

## C. *Abuse of Process*

Plaintiffs' abuse of process claims are clearly time-barred under the applicable limitations period. Under New York law, the statute of limitations for plaintiffs' abuse of process claims is one year. *See* N.Y.C.P.L.R. § 215(3); *Heinfling v. Colapinto*, 946 F.Supp. 260, 266 (S.D.N.Y.1996). Here, plaintiffs' Amended Complaint alleges that the United States filed its *amicus* brief on or before June 26, 1995, and that certain non-United States defendants obtained the Brassuer Statement for use in the U.K. Proceeding on or before August 14, 1996. *See* Amend. Cmplt. at ¶¶ 31, 33–34. Assuming that such actions do in fact constitute an abuse of process,[7] they occurred one year before February 17, 1998, the date upon which this action was commenced. Accordingly, plaintiffs' abuse of process claims must be dismissed.

## D. *Plaintiffs' Motion to Amend their Complaint*

Finally, while plaintiffs have requested leave to file a Second Amended Complaint, the Court denies such request because the federal claims asserted by such complaint would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Initially, plaintiffs' claims under the False Claims Act must be dismissed for the reasons stated above. Moreover, as defendants argue, plaintiffs' new RICO claims must be dismissed because they fail to identify any "enterprise" separate from each individually named defendant. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996); Notice of Motion of Relator for Relief from Final Judgment dated May 30, 1998, Proposed Complaint ("Proposed Complaint") at ¶¶ 52–52M.

---

**7.** Alternatively, plaintiffs abuse of process should be dismissed on the merits, as plaintiffs have failed to allege that defendants caused any process to issue at all, or that such process was issued for some purposes collat-

eral to the litigation between the parties. *See Bernard v. U.S.*, 25 F.3d 98, 104 (2d Cir.1994); *Chamberlain v. Lishansky*, 970 F.Supp. 118, 121 (N.D.N.Y.1997).

**238**

Plaintiffs also fail to plead any facts permitting a rational inference that defendants participated in the "operation or management of a RICO enterprise," further necessitating dismissal. *See Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); Proposed Complaint at ¶¶ 52–55M.

Similarly, assuming this Court could even entertain this application, plaintiffs' requests for relief from the final judgments in *Pentagen I, Pentagen II*, and the *Trademark Action* must also be denied because plaintiffs present no new evidence that warrants such relief. *See* Proposed Complaint at 53; *cf. M.W. Zack Metal Co. v. Navigation Corp. of Monrovia*, 675 F.2d 525, 530 (2d Cir.1982) (denying request for relief because fraud was "intrinsic" to prior proceedings and thus not reviewable in an independent action); James Wm. Moore, *et al.*, Moore's Federal Practice ¶ 60.81[1][b][i-ii] (1999). Specifically, *Pentagen I* and *Pentagen II* were each dismissed for lack of subject matter jurisdiction because plaintiffs could not demonstrate that they were the "original source" of a false claim as required by the False Claims Act. *See Pentagen I*, 1995 WL 693236 at *11; *Pentagen II*, at 1997 WL 473549 at *6–*10. As no new evidence of collusion by defendants speaks to that issue, relief from such judgments is inappropriate.

Additionally, while plaintiffs point to new evidence that defendants copied their Mentix software in violation of the Copyright Act, such evidence does not provide any basis for relief from the judgment in the *Copyright Action*. *See* Proposed Complaint at ¶¶ 26B–26E. Indeed, according to such evidence, this copying occurred prior to December 1990, well before December of 1993 when Pentagen registered its copyright in Mentix. *See Copyright Action* at 8; Cross–Examination of E.F. Brasseur dated April 12, 2000, at 38.

In sum, all the federal claims advanced by plaintiffs' proposed Second Amended Complaint would be futile, and the Court denies leave to amend on that basis. Moreover, as all federal and state claims properly before the Court have been dismissed, the Court declines to exercise supplemental jurisdiction over plaintiffs' state claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are hereby granted and plaintiffs' request to amend their complaint shall be and hereby is denied. Plaintiffs are directed to file their response to defendants' CACI International, CACI Systems and CACI Federal's motion for sanctions on or before July 31, 2000.

It is **SO ORDERED.**