**PENTAGEN TECHNOLOGIES INTERNATIONAL LIMITED and Russell D. Varnado Plaintiff(s),**

v.

**UNITED STATES of America, CACI Int'l Inc., CACI Systems Integration, Inc., and CACI, Inc.—Federal International Business Machines Corporation, Lockheed Martin Corporation, AT & T Company, PRC Inc., I–Net**

---

Inc., Statistica Inc., Express Company Secretaries Limited, Jordans & Jordans & Sons Limited, Jordans Group Ltd., Steptoe & Johnson, and J. William Koegel, Jr., Esq., Davies Arnold & Cooper, and George A. Menzies, Esq., E.F. Brasseur, Defendant(s).

No. 98 CIV. 1090(JES).

United States District Court,
S.D. New York.

Nov. 5, 2001.

Joel Z. Robinson & Co., New York City (Joel Z. Robinson, of counsel), for plaintiffs.

Owen & Davis PC, New York City (James M. Davis, of counsel), Steptoe & Johnson LLP, Washington, DC (J. William Koegel, Jr.), for CACI Intern., Inc., CACI Systems Integration, Inc., CACI Inc.–Federal.

Mary Jo White, U.S. Atty., New York City, for U.S.

McKenna & Cuneo, Washington, DC (Frederic M. Levy, of counsel), Trachtenberg & Rodes, New York City (Leonard A. Rodes, Barry J. Friedberg, of counsel), for International Business Machines, Corp., Lockheed Martin Corp., PRC, Inc., defendants.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York City (Thomas A. Leghorn, Brett A. Scher, of counsel), for Express Co. Secretaries Limited, Jordan and Sons, Limited, Jordan Group Limited, Davies Arnold & Cooper, George A. Menzies.

American Telephone & Telegraph Corp, Liberty Corner, NJ (Kevin T. O'Reilly, of counsel), for AT&T Corp.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pentagen Technologies International Limited. ("Pentagen") and Russell D. Varnado ("Varnado") (collectively "plaintiffs") filed the instant action alleging violations of 31 U.S.C. §§ 3729–33 (2001) (the "False Claims Act" or the "FCA") and abuse of process against defendants United States of America ("United States") and E.F. Brasseur ("Brasseur") (collectively "the Government defendants"), CACI Int'l, Inc., CACI Systems Integration, Inc., and CACI, Inc. Federal (collectively "CACI"),

and various other individual corporations, attorneys, and law firms. On October 6, 1998, defendants submitted motions to dismiss. The CACI defendants also filed a motion for sanctions against Pentagen and its counsel of record, Joel Z. Robinson ("Mr. Robinson" or "plaintiffs' counsel"), pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 (2001), and sought an injunction pursuant to 28 U.S.C. § 1651(a) (2001), preventing Pentagen from filing further litigation. By Memorandum Opinion and Order dated June 29, 2000, the Court granted defendants' motion to dismiss and requested a response from plaintiffs with respect to the sanctions motion. The Court hereby grants CACI defendants' request for sanctions, in part, and directs the CACI defendants to submit detailed affidavits outlining its costs and expenses in defending against this action.

## BACKGROUND

The underlying facts related to the instant matter are summarized briefly below. The Court assumes familiarity with its prior Opinion dated June 29, 2000.

On February 19, 1998, Pentagen filed this action, the ninth in a long history of litigation, alleging that Pentagen's failure to secure a software contract with the Department of Defense was due to the surreptitious conduct of defendants as well as others in stealing its so-called MENTIX software ("MENTIX"). Pentagen's first action against the CACI defendants, which alleged copyright and trademark violations of MENTIX, was removed to federal court by CACI in January, 1994. *See Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.*, No. 94 Civ. 0441 (N.Y. Sup.Ct. filed July, 1993, removed to S.D.N.Y. Jan. 26, 1994) ("Pentagen I"). Before CACI removed Pentagen I, Pentagen filed another action in this district alleging the same copyright and trademark infringement claims detailed in the prior action. *See Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.*, No. 93 Civ. 8512 (S.D.N.Y. filed Dec. 10, 1993) ("Pentagen II"). Pentagen I and II were merged as related actions and dismissed together along with Pentagen IV, discussed below, in an opinion by Judge Mukasey. *See Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.*, Nos. 93 Civ. 8512, 94 Civ. 0441, 94 Civ. 8164, 1996 WL 435157 (S.D.N.Y., August 2, 1996). After Plaintiff filed Pentagen II, CACI filed suit in the United States District Court for the Eastern District of Virginia seeking a declaratory judgment that, *inter alia*, CACI had not infringed on any of Pentagen's copyrights and trademarks during CACI's marketing and contract work for the United States Army. *See CACI Int'l v. Pentagen Techs. Int'l Ltd.*, No. 93–1631–A, 1994 WL 1752376 (E.D.Va. June 19, 1997) ("Pentagen III"). The district court granted defendants' motion for summary judgment on its claims for declaratory relief and denied plaintiff's motions for reconsideration and recusal.[1] *See id.* Plaintiff then appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed all of the lower court's holdings. *See CACI Int'l Inc. v. Pentagen Techs. Int'l Ltd*, No. 93–1631–A, 1995 WL 679952 (4th Cir.1995) (per curiam). In so doing, the Fourth Circuit included language of the district court's opinion that Pentagen had " 'overlooked an essential element of an infringement claim: that the work was copied.' " *Id.* at *3 (quoting *Pentagen III*, 1994 WL 1752376, at *1). As to Pentagen's motion for recusal of the district

---

1. Plaintiff had alleged that the district judge decided the case in a way that benefitted her husband. *See CACI Int'l Inc. v. Pentagen Techs. Int'l Ltd.*, No. 93–1631–A, 1995 WL 679952, at *1 (4th Cir. Nov. 16, 1995) (per curiam) (citations to Appellant's brief omitted).

judge, the court admonished plaintiff's counsel, stating that the claim was "frivolous on its face" and "reprehensible." *Id.* at *6, n.12. In a later related action, the Fourth Circuit affirmed the imposition of monetary sanctions on plaintiff's counsel for misconduct.[2]

Ignoring the adverse judgments, Pentagen continued to file suit. *See, e.g., Pentagen Techs. Int'l Ltd. v. J.P. London,* No. 94 Civ. 8164 (N.Y. Sup.Ct. filed Sept. 1994, removed to S.D.N.Y. Nov. 10, 1994) ("Pentagen IV"). Judge Mukasey, who had combined and then suspended Pentagen I and II pending the outcome of Pentagen III, dismissed Pentagen I, II, and IV in part on *res judicata* grounds, observing that the court was presented with a "paradigm of the situation that *res judicata* is intended to avert and resolve." *Pentagen IV,* 1996 WL 435157, at *9. While Pentagen III was being litigated, Pentagen filed another suit in this district, again alleging that CACI improperly marketed Pentagen's software to the United States Army; this time, however, Pentagen brought the action under the *qui tam* provisions of the FCA. *See Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.,* No. 94 Civ. 2925, 1996 WL 11299, at *3 (S.D.N.Y. Jan.4, 1996) ("Pentagen V"). Judge Carter denied plaintiff's request for a preliminary injunction and dismissed the claims against CACI defendants for lack of subject matter jurisdiction. The court found that Pentagen failed to demonstrate—as it must in a *qui tam*

action—that it was the "original source" of the information forming the basis of its claims. *See id.* at *7–8. Judge Carter observed further that the claims arose from "the same nucleus of facts as the copyright and trademark infringement claims in Pentagen III," and, while declining to impose monetary sanctions, noted that dismissal would be an "appropriate sanction" because it "dispos[ed] of the fruit of [plaintiff's] questionable efforts." *Id.* at *13. Judge Carter also characterized some of plaintiff's counsel's arguments as "admittedly ridiculous." *Id.* at *16.

Undeterred, counsel added Varnado as a plaintiff in a new action alleging the same claims as in Pentagen V but now with Varnado as the original source of the information at issue.[3] *See United States ex. rel. Pentagen Techs. Int'l Ltd. v. Caci Int'l Inc.,* No. 96 Civ. 7827, 1997 WL 473549, at *8 (S.D.N.Y. Aug.18, 1997) ("Pentagen VI"). Judge Sweet dismissed the case, *inter alia,* on *res judicata* grounds finding that except for the addition of Varnado the claims were "factually identical" to the prior action. *Id.* at *9–10.[4] Plaintiffs then appealed unsuccessfully to the United States Court of Appeals for the Second Circuit. *See United States ex. rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.,* No. 97–6326, 1999 WL 55259 (2d Cir. Feb.5, 1999). In the course of that appeal, plaintiffs' counsel represented to the court

---

**2.** In *In Re Joel Z. Robinson,* No. 95–2506, 1996 WL 597829 (4th Cir. Oct. 18, 1996) (per curiam), the Fourth Circuit affirmed the district court's decision to impose sanctions on plaintiffs and Mr. Robinson for failing to appear at depositions. The lower court had noted that "[their] conduct on repeated occasions has been willful, deliberate, flagrant and dilatory in their effort to obstruct this litigation." *CACI Int'l Inc. v. Pentagen Techs. Int'l Ltd.,* No. 93 Civ. 1631–A (E.D.Va. July 7, 1995) (affirming order of the magistrate judge and imposing sanctions).

**3.** Judge Carter had denied Pentagen's motion to add Varnado in Pentagen V. *See Pentagen VI,* 1997 WL 473549, at *8.

**4.** In granting defendant's motion to dismiss, Judge Sweet observed that the case was "the most recent, and hopefully the last in a series of cases brought by Pentagen against the defendants, all arising out of a dispute over software and its origins." *Pentagen VI,* 1997 WL 473549, at * 1.

that he would refrain from bringing any further related actions.

Thereafter, Pentagen filed two (2) more suits against the United States. The first, alleging Government infringement on Pentagen's ownership of MENTIX during the Army's evaluation of the software, was dismissed for failure to state a claim, *see Pentagen Techs. Int'l Ltd. v. United States*, No. 97–245 (Fed.Cl.), *aff'd*, 175 F.3d 1003 (Fed.Cir.1999) ("Pentagen VII"); the second, alleging that the United States House of Representatives had reports providing evidence for plaintiffs' abuse of process claim in the instant case, was dismissed similarly and plaintiffs' motion for re-argument was denied. *See Pentagen Techs. Int'l Ltd. v. Comm. on Appropriations of the United States House of Representatives*, 20 F.Supp.2d 41 (D.D.C.1998) ("*Pentagen VIII*").

Persisting, plaintiffs brought their third *qui tam* action, which is the basis for defendants' instant sanctions motion. *See Pentagen Techs. Int'l Ltd. v. United States*, 103 F.Supp.2d 232 (S.D.N.Y.2000) ("*Pentagen IX*"). Plaintiffs alleged that defendants' behavior in litigating the first two *qui tam* actions constituted an abuse of process under state law and was in violation of the FCA. Specifically, Pentagen alleged that CACI colluded with the United States defendants in filing an *amicus curiae* brief, in meeting with a member of the Executive Branch to obtain a witness statement (the "Brasseur Statement"), and in otherwise seeking the assistance of the United States in preparing their defense. The Court held that plaintiffs' claims under the FCA must be dismissed because the United States never waived sovereign immunity in this area

and the FCA does not provide for a private right of action. *See Pentagen IX*, 103 F.Supp.2d at 236. The Court then dismissed plaintiffs' abuse of process claim, finding that it was barred by the applicable statute of limitations. *See id.* at 237. Plaintiffs also requested leave to amend the complaint a second time, but the Court denied that application because the claims asserted were without merit and because plaintiffs failed to produce any new evidence, further amending the complaint would be "futile." *Id.*[5]

## DISCUSSION

### A. Sanctions

CACI defendants request sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") and 28 U.S.C. § 1927. The Court will address each of defendants' requests in turn.

The district court has broad discretion in determining whether to grant Rule 11 sanctions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402–05, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Rule 11 sanctions are appropriate where a person signs a filing for "an improper purpose such as to delay or needlessly increase the cost of litigation," or "without a belief formed from a reasonable inquiry" that the argument is non-frivolous. *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d Cir.1994). A filing is frivolous if it is " 'clear under existing precedent that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.' " *Simon DeBartolo Group, L.P. v. Richard E. Jacobs, Inc.*, 186 F.3d 157, 167 (2d Cir.1999) (quoting *Mare-*

---

**5.** Plaintiffs subsequently filed an appeal with the Second Circuit, which was dismissed because of plaintiffs' default in July, 2001. Furthermore, plaintiffs filed what amounts to their fourth *qui tam* action in this district, all

four of which originated from the same nucleus of facts. *See U.S. ex. rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00 Civ. 6167, 2001 WL 770940 (S.D.N.Y. July 10, 2001).

*no v. Rowe,* 910 F.2d 1043, 1047 (2d Cir. 1990)). Finally, in assessing a claim for Rule 11 sanctions, courts apply a standard of "'objective unreasonableness.'" *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997) (quoting *United States v. Intern. Bhd. of Teamsters,* 948 F.2d 1338, 1345–46 (2d Cir.1991)).

■ In the instant matter, plaintiffs' counsel has failed to demonstrate that he made any reasonable inquiry before deciding to sue these particular defendants on the specific grounds chosen. With respect to plaintiffs' *qui tam* claim under the FCA, at the time of filing there existed clear, long-standing precedent establishing that the Government cannot be sued unless it has waived its sovereign immunity. *See e.g., F.D.I.C. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Moreover, even after being given the opportunity to amend the complaint and despite a specific warning by this Court that it considered the Government immune in the context of this action, plaintiffs' counsel failed to offer any meaningful argument that the Government had waived its sovereign immunity.[6] *See* Hr'g Tr. of March 19, 1999, at 47. Counsel's inclusion of the non-Government defendants in this action, specifically CACI, was also clearly improper. As this Court discussed in its previous opinion, the FCA on its face does not provide a private right of action for litigation misconduct, *see* 31 U.S.C. § 3730(b), nor is there any credible argument to support a claim that the Court should recognize such an implied right of action in the instant case.[7] *See Pentagen IX,* 103 F.Supp.2d at 236–37. Moreover, plaintiffs' counsel should have know that his *qui tam* claim stood no chance of success on the merits. Since his previous two (2) *qui tam* actions had been dismissed, plaintiffs' counsel could not have reasonably believed that the third such action, absent any relevant new facts or law, would fare any better. Despite repeated dismissals, however, plaintiffs' counsel continues to file actions based on the same facts and circumstances previously addressed by this and other courts.

Indeed, plaintiffs' counsel was specifically advised of the frivolous nature of his claims when Judge Carter, although declining to impose sanctions, observed that plaintiffs' claims arose from "the same nucleus of facts" as Pentagen III and that dismissal would "dispose of the fruit of [plaintiffs'] questionable efforts." *Pentagen V,* 1996 WL 11299, at *13. Judge Sweet's similar dismissal of plaintiffs' second *qui tam* action on *res judicata* grounds should have given plaintiffs' coun-

**6.** Given the governing statutory scheme, it is likely that any argument maintaining that the Government intended to waive its sovereign immunity in the context of the FCA would be meritless. Indeed, because the FCA allows individuals to sue on behalf of the Government to recover federal monies, it is illogical that the Government itself could be sued under the same Act. *See* 31 U.S.C. § 3730.

**7.** On the contrary, as the Court noted, the explicit inclusion in the statute of a private right of action based upon the making of a false claim for payment upon the United States cuts against plaintiff's argument that the Court should read into the statute further private rights of action. *See Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.") (citations omitted). Furthermore, although plaintiffs' counsel makes much of the fact that the Government and non-Government defendants acted improperly, the mere existence of such wrongful actions, even assuming their impropriety, is not sufficient to create a private right of action under the FCA.

sel further notice of the frivolousness of any additional litigation. *See Pentagen VI,* 1997 WL 473549, at *9–10. Undeterred, however, plaintiffs' counsel filed his third *qui tam* action against defendants. This time, in addition to alleging essentially the same facts, plaintiffs' counsel ignored Judge Carter's prior opinion relating to Pentagen V in which Judge Carter held that the activities supposedly constituting plaintiffs' "litigation misconduct" claim were—far from being misconduct—proper in the context of a *qui tam* action.[8] Thus, Pentagen and its counsel have again attempted to use the FCA's *qui tam* procedure to litigate its original copyright and trademark action and to continue pressing harassing litigation in the face of contrary direction from the courts.

▬ Plaintiffs' decision to bring its abuse of process claim was similarly unreasonable. Plaintiffs' counsel brought the abuse of process claim without any credible basis for believing that the applicable statute of limitations had been tolled. Under New York law, the statute of limita-

tions for plaintiffs' abuse of process claim is one (1) year. *See* N.Y.C.P.L.R, § 215(3) (2001); *Heinfling v. Colapinto,* 946 F.Supp. 260, 266 (S.D.N.Y.1996). Plaintiffs' counsel filed this action on February 17, 1998, over two (2) years after the Government supposedly engaged in litigation misconduct by filing an *amicus* brief on or before June 26, 1995, and over a year after the non-Government defendants' supposedly engaged in litigation misconduct by obtaining the Brasseur Statement on or before August 14, 1996. Accordingly, plaintiffs' abuse of process claim was clearly time-barred. *See Pentagen IX,* 103 F.Supp.2d at 237; *see also Borison v. Corracchia,* No. 96 Civ. 4783, 1997 WL 232294 (S.D.N.Y. May 7, 1997).[9]

▬▬ Assuming, *arguendo,* that Pentagen brought its abuse of process claim within the statute of limitations, plaintiffs' counsel could not have reasonably believed that the claim could survive on the merits. Although plaintiffs' counsel went to great lengths to allege that defendants actually caused process to issue,[10] he ignored the

---

**8.** Judge Carter's opinion stated that: "[N]othing in the [False Claims Act's] language prohibits the government from communicating with the defendants or submitting an amicus curiae brief on their behalf … [and] communications between defendants and the [G]overnment are common in an action where the Government has not intervened." *U.S. Dep't of Defense v. CACI Int'l Inc.,* 953 F.Supp. 74, 78 (S.D.N.Y.1995).

**9.** Plaintiffs maintain that the one (1) year statute of limitations should be tolled because defendants fraudulently concealed relevant evidence and did not disclose such evidence until after the statute of limitations period had run. *See* Pls.' Br. Opp'n., at 17–18. Specifically, plaintiffs state that "[o]n February 3, 1997, plaintiffs issued a FOIA Request concerning the evidence contained in the [Brasseur] Statements, and the U.S. responded with false information thus concealing the evidence upon which the abuse of process claim is based." *Id.* As an initial matter, plaintiffs fail to offer any support for their otherwise

bare assertion that defendants concealed evidence. Furthermore, as explained above, plaintiffs' abuse of process claim was based on the Brasseur Statement *and* the government's *amicus* brief; there is no contention that plaintiffs were not in possession of the latter in 1995. Nor do plaintiffs maintain that they were without the Brasseur Statement itself in 1997. Thus, plaintiffs were well aware of the nature of their claims before the one (1) year limitations period expired. Plaintiffs' delay in receiving additional information contained in the Statement—none of which to this date has been shown to have relevancy—is inconsequential. *See Corcoran v. New York Power Auth.,* 202 F.3d 530, 543 (2d Cir.1999) (stating that alleged concealment must prevent plaintiff from discovering the nature of his claim within the limitations period).

**10.** Plaintiffs ultimately amended their complaint to include allegations that defendants caused process to issue, but the lack of such an inquiry at the outset caused the Court to

further fact that under New York law he also needed to plead some purpose collateral to the litigation for engaging in these acts. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984) ("Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective."). The only such purpose plaintiffs' counsel offered was that defendants wanted to prevail in the litigation itself; this is not a sufficient under New York law. *See Bernard v. United States*, 25 F.3d 98, 104 (2d. Cir.1994) ("[P]erson activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process.") (citing *Hornstein v. Wolf*, 109 A.D.2d 129, 491 N.Y.S.2d 183, 187 (1985), *aff'd*, 67 N.Y.2d 721, 499 N.Y.S.2d 938, 490 N.E.2d 857 (1986)); Am. Compl. ¶ 42.

 It follows that this is a most appropriate case for imposition of Rule 11 sanctions. Rule 11 was designed to curb the effect of baseless litigation. *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Here, defendants have been forced to defend yet another in a long series of complaints that, beyond simply being unsuccessful, have had " 'absolutely no chance of success under existing precedents.' " *Shafii v. British Airways, PLC*, 83 F.3d 566, 570 (quoting *Mareno*, 910 F.2d at 1047 (2d Cir.1990)). Indeed, counsel, by seeking to contravene the explicit findings of prior litigation without any meritorious arguments to extend the law, went far beyond

the standard of objective unreasonableness in filing this action. As such, the Court finds Rule 11 sanctions against plaintiffs' attorney are appropriate in an amount to be determined upon review of the appropriate affidavits and objections.

 The CACI defendants have also moved for sanctions pursuant to 28 U.S.C. § 1927. Section 1927 allows a court to impose sanctions when an attorney " 'multiplies the proceedings in any case unreasonably and vexatiously,' " *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999) (quoting 28 U.S.C. § 1927), and obliges attorneys throughout the litigation "to avoid dilatory tactics." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1261 (2d Cir.1996). Unlike Rule 11's objective standard, however, section 1927 requires the additional showing of subjective bad faith. *See Lapidus*, 112 F.3d at 96. Bad faith can be inferred when an attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer*, 194 F.3d at 336 (internal quotations and citations omitted).

Evidence of plaintiffs' counsel's bad-faith in litigating the instant claim is abundant. Most egregiously, plaintiffs' counsel has engaged in a pattern of litigation designed to evade previous rulings. In Pentagen VI, the court noted that "by filing [the] action, Pentagen ha[d] impermissibly attempted to evade" the dismissal in Pentagen V. *Pentagen VI*, 1997 WL 473549, at *8. Not surprisingly, plaintiffs' were keenly aware of the repetitive nature of their claims, admitting that "except for the addition of Varnado as a plaintiff," the claims

warn plaintiffs' counsel at a Pre–Trial Conference of the potential frivolousness of his claim. *See* Hr'g Tr. of March 19, 1999, at 28. Had plaintiffs agreed to dismiss their claims

at that juncture, the Court would likely have been more reluctant to impose sanctions given that defendants had exerted minimal effort in defending against this claim.

were "factually identical." *Id.* at *7. Moreover, the similarity between plaintiffs' claims here and those presented in Pentagen V reflects a continuing intent to evade the rulings of courts in this district. Not only was this litigation frivolous and repetitive, therefore, but it was intentionally so.

Other courts have also been frustrated by the litigation brought by plaintiffs' counsel. In addition to Judge Sweet's comments noted above, Judge Newman, in one of Pentagen's appeals before the Second Circuit, threatened to impose sanctions because of the amount of repetitive litigation brought by plaintiffs. *See* Hr'g, No. 97–6326, Feb. 5, 1999. It was in the course of that same hearing, furthermore, that Judge Newman elicited a promise from plaintiffs' counsel not to initiate future litigation based on these same operative facts. *Id.* Plaintiffs' counsel broke that promise by filing his subsequent *qui tam* actions.

■■■ As a result of plaintiffs' counsel's vexatious litigation strategy and needless occupation of judicial resources, the Court feels compelled to exercise its discretion to punish counsel for its abuse of the judicial process. *See Shafii,* 83 F.3d at 571. The Court is authorized to exercise such power where, as here, plaintiff presents claims: (1) without a colorable basis; and (2) in bad-faith. *See Schlaifer,* 194 F.3d at 336. Accordingly, the Court imposes sanctions against plaintiffs' counsel under section 1927 to stem counsel's consistent pattern of harassment.

### B. Award of Compensatory Fees and Costs

■■■ The Court must now determine the appropriate method and degree of sanctions. The Court has discretion in determining the appropriate amount of attorney's fees. *See Eastway Const. Corp. v. City of New York,* 821 F.2d 121, 123 (2d Cir.1987). The fees should be the minimum needed to deter plaintiffs' counsel's conduct without over-punishing him. *See id.* Accordingly, pursuant to Rule 11 and 28 U.S.C. § 1927, the Court hereby directs Mr. Robinson to personally compensate the CACI defendants for their attorneys' fees and costs incurred defending the instant matter.[11]

### C. Injunction on Further Litigation

■■■ Pentagen's long history makes it clear that mere dismissals and/or monetary sanctions will not alone be an effective means of deterring future frivolous litigation. Although the Court recognizes the danger of imposing limits on a party's access to the courts, it also recognizes the superseding danger of allowing a party like Pentagen to occupy the sparse resources of the judiciary with its baseless claims. Therefore, in accordance with its authority under 28 U.S.C. § 1651(a), the Court enjoins Pentagen from filing any further litigation without permission of the Court. *See Malley v. New York City Bd. of Educ.,* 112 F.3d 69 (2d Cir.1997) (finding an injunction appropriate where the plaintiff persisted in spite of adverse judgments in frivolous and repetitive litigation).

### CONCLUSION

For the foregoing reasons, the CACI defendants' motion for sanctions against plaintiffs' counsel under Rule 11 and section 1927 is granted. The CACI defendants should submit affidavits within thirty (30) days of the date of this Order addressing the appropriate amount of sanctions in

---

11. The Court declines to order plaintiffs to share jointly and severally in the judgment with their counsel. Although plaintiffs' counsel should have been aware of the impropriety and frivolousness of the complaint before filing, there is little evidence in the record to support a finding against plaintiffs directly.

light of the standards articulated above. The Court also grants the CACI defendants' motion for an injunction pursuant to 28 U.S.C. § 1651.

It is SO ORDERED.