100,000 VICTIM FAMILIES NOTE HOLDERS OWNERS OF SECURITIES IN TOWERS FINANCIAL CORPORATION and Steven J. Hoffenberg, pursuant to court ordered restitution, Plaintiff,

v.

**SCHULTE ROTH & ZABLE**
Defendant.

No. 99 Civ. 6042(RMB).

United States District Court, S.D. New York.

May 14, 2001.

Steven J. Hoffenberg, Bradford, PA, pro se.

Alan R. Glickman, Schulte Roth & Zabel, LLP, New York City, for Schulte Roth & Zable.

## DECISION AND ORDER

BERMAN, District Judge.

### I. Background

Plaintiff Steven J. Hoffenberg ("Plaintiff"), a *pro se* litigant, sues Messrs. Schulte Roth & Zabel ("Defendant"), counsel to LaSalle National Bank, et al., seeking $200,000,000.00 in damages alleging, among other things, that "[Defendant] had [no] legal right to settle the Shawmut D[ & ]P lawsuit in 1997 hurting TFC [Towers Financial Corporation] stock and note holders[.]" (Amended Compl. at ¶ 71.)[1] According to Plaintiff, by helping to settle the 1993 action entitled *LaSalle National Bank, et al. v. Duff & Phelps Credit Rating Co. and Shawmut Bank Connecticut, N.A.* (hereinafter "Bondholder Litigation"), Defendant "willfully with[ ]held the key inside information ... from law firms

---

1. On March 5, 1997, Plaintiff was sentenced by District Court judge Robert W. Sweet to a term of twenty years imprisonment and ordered to pay $475,157,340.00 in restitution following his conviction for defrauding bondholders and noteholders of Towers Financial Corporation ("Towers"). *U.S. v. Hoffenberg,* 94 Cr. 213, 94 Cr. 321(RWS), 1997 WL 96563 (Mar. 5, 1997).

assisting TFC stock and note holders." Defendant is also alleged to have violated the 1994 Order of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") which adopted the Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Chapter 11 Trustee in the Towers Financial Corporation bankruptcy proceeding ("Joint Plan"). (Amended Compl. at ¶ 39.)

On September 8, 1999, the original Defendants in this case, Schulte Roth & Zabel, European American Bank, Ron Drake, and LaSalle National Bank filed a motion to dismiss Plaintiff's (earlier) claims, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 8(a)(2) and 12(b)(6), and to enjoin the Plaintiff from bringing any future lawsuits. Plaintiff filed a response to Defendants' motion to dismiss on October 31, 1999. On January 19, 2000, United States Magistrate Judge Douglas F. Eaton, to whom the matter had been referred, issued a report and recommendation ("Report") recommending, among other things, that the Defendants' motion to dismiss be granted.[2]

On July 12, 2000, this Court adopted Judge Eaton's Report, in part, and dismissed Plaintiff's original complaint. (*See* Order of the Court dismissing the original complaint ("Order"), dated July 12, 2000, at 2.) Plaintiff was given leave to file an amended complaint against (only) Defendant Schulte Roth & Zabel which he did on August 8, 2000. (*Id.*) Defendant filed the instant motion to dismiss Plaintiff's amended complaint on December 15, 2000 arguing, as it had successfully done before,

that Plaintiff had failed to establish standing to sue or to state a claim upon which relief could be granted.[3] On January 26, 2001, Plaintiff filed a response to Defendant's motion to dismiss (and has subsequently filed several additional documents with the Court).[4]

Oral argument was held on May 11, 2001. Plaintiff participated by phone. His wife, Lisa Hoffenberg, was present in the Court's chambers; along with Mark Moore, Mike Wallace, and Defendant Schulte Roth & Zabel.

## II. Standard of Review

In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *see also Morin v. Trupin,* 711 F.Supp. 97, 103 (S.D.N.Y. 1989). Also, the Court must liberally construe the claims of a pro se litigant. *See, e.g., Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999); *Brown v. Croce,* 967 F.Supp. 101, 103 (S.D.N.Y.1997) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

## III. Analysis

In allowing Plaintiff to file an amended complaint, the Court sought to "go the extra mile" and give the *pro se* litigant the opportunity to cure the defect(s) of his original complaint. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Jones v. Trump,* 1997 WL 277375, at *8 (S.D.N.Y. May 27, 1997)

---

**2.** On February 14, 2000, Plaintiff filed objections to the Report and Defendants filed a reply to Plaintiff's objections on February 28, 2000.

**3.** Defendant also asserted that the action is time barred by Fed.R.Civ.P. 60(b) and that

Plaintiff failed to plead fraud with particularity under Fed.R.Civ.P. 9(b). (Def. Motion to Dismiss the Amended Compl. at 1.)

**4.** *See infra* at 6, n. 8.

("[w]here the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant."). **He has not done so.**

### Lack of Standing

Plaintiff claims that he has standing to bring this action because he "was the control TFC stockholder owning over 58% of the TFC common stock in 1975—2000," and "owned at all times of defendant SRZ fraud [and] deceit act's over 58% of the TFC common stock in 1975—2000[.]" (Amended Compl. at ¶¶ 6, 10.) Plaintiff also suggests that he has standing to sue based upon Judge Sweet's March 7, 1997 sentencing order requiring Plaintiff to pay restitution to "the 100,000 holders of TFC [Towers Financial Corporation] securities." (Plaintiff's Response to Def. Motion to Dismiss at 9.)

■ Defendant argues persuasively that Plaintiff does not have standing as a common stock holder in Towers Financial Corporation because, "[p]ursuant to the [Joint Plan], the holders of Towers common stock 'receive nothing under the Plan.'" (Def. Motion to Dismiss the Amended Compl. at 12.) Defendant also argues correctly that Plaintiff's (continued) suggestion that he has standing to sue on behalf of Towers noteholders is without merit, in light of the Court's previous ruling that *pro se* Plaintiff lacks standing to sue on behalf of a class.

(Reply in Further Support of Def. Motion to Dismiss the Amended Compl. at 2)(citing Order at 3–6.)[5] Further, Defendant asserts, and the Court agrees, that any injuries "were the result of [the Plaintiff's] own wrongdoing" and, therefore, "he cannot now sue his victims *and their counsel* to recover damages that his illegal actions brought about." (Def. Motion to Dismiss the Amended Compl. at 12) (quoting Order at 5) (emphasis in the original.)

■ As was also true of his original complaint, Plaintiff has not successfully or sufficiently alleged a personal stake in the outcome of the controversy and, therefore, has not met the threshold requirement of standing. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (holding that the plaintiff must have " 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf") (citing *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Plaintiff does not have standing to bring the instant action based upon his alleged ownership of "over 58% of the [Towers] common stock." (Amended Compl. at ¶ 10.) The Bankruptcy Court ruled that "all capital stock of the Debtors is deemed automatically canceled and retired by operation of law and shall cease to exist." *In re Towers Financial Corp. et al.,* 93–B–41558 (PBA) (Dec. 8, 1994).[6] All rights that the Plaintiff may

---

5. "Pro-Se is collecting assets due over 100,000 TFC poor restitution victims holders of TFC securities," and "the court must examine the quality of representation with particular care where, as here, a class is sought ..." (Reply in Further Support of Def. Motion to Dismiss the Amended Compl. at 2) (citing Plaintiff's Response to Def. Motion to Dismiss at 9, 15.) In addition, Defendant correctly observes that Plaintiff specifically agreed that he "[would] not act for class [going forward] in the instant action." (Pl. Objections to Report ¶ 17(a).)

6. *"Payment With Respect to Class 4 Claims and Class 5 Interests* The Holders of Class 4 Claims or Class 5 Interests shall receive nothing under this Plan. As of the Effective Date, the rights of the Holders of Class 4 Claims or Class 5 Interests shall be terminated and discharged and all shares of stock representing Class 5 Interests shall be canceled." Joint Plan of Reorganization of Oct. 4, 1994, 93.

have enjoyed as an owner of common stock in Towers Financial Corporation ceased to exist following the December 8, 1994 Order of the Bankruptcy Court. Also, as the Court previously held, *pro se* Plaintiff lacks standing to sue on behalf of the Towers noteholders.[7] (*See* Order at 4.) Judge Sweet's March 7, 1997 sentencing order, requiring the Plaintiff to pay restitution, does not confer standing upon Plaintiff to sue on behalf of Towers noteholders. (*Id.*) (adopting, in part, Report at 8–9); *see also McLeod v. Crosson,* 1989 WL 28416, at *1 (S.D.N.Y. Mar. 21, 1989) ("[i]t is well settled in this circuit that pro se plaintiffs cannot act as class representatives.").

In addition, Plaintiff, who was held criminally responsible for "conspiracy to violate the securities laws by fraudulently selling securities," should not be able to sue his victims and their counsel to recover damages that his illegal actions brought about. *U.S. v. Hoffenberg,* 94 Cr. 213; *see also In re Ollie M. Grimes,* 147 B.R. 307, 315 (Bkrtcy.E.D.N.Y.1992) (stating that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime" (citing *Kearns v. Manufacturers*

*Hanover Trust Co.,* 51 Misc.2d 34, 37, 272 N.Y.S.2d 535, 540 (N.Y.Sup.Ct.1966))).

**Excessive Litigation**

The Court reminds Plaintiff that he may not assert baseless claims or abuse the judicial process through the instigation of frivolous or duplicative suits.[8] "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines Inc.,* 792 F.2d 19, 24 (2d Cir.1986).[9]

## IV. Conclusion and Order

For the foregoing reasons, the Court grants Defendant's motion to dismiss with prejudice. The Clerk is respectfully directed to enter an order dismissing the complaint.

---

7. Nor does Plaintiff even allege that he is or was a noteholder.

8. *See Pier v. Long Island Sav. Bank,* 1998 WL 537798, at *1 (2d Cir.1998) (holding that if the Plaintiff exhibits a pattern of abusive filings, "the district court would be well within its discretion to impose a 'leave to file' requirement ..."); *Malley v. New York Cty. Bd. of Educ.,* 112 F.3d 69 (2d Cir.1997) (per curiam) (upholding an injunction where Plaintiff had been previously warned that he could face such a sanction); *Sassower v. Sansverie,* 885 F.2d 9, 11 (2d Cir.1989); *Jones v. Trump,* 1997 WL 277375, at *1 (S.D.N.Y. May 27, 1997).

9. Over the last several weeks and months, Plaintiff has presented numerous submissions to the Court complaining about the conditions of his confinement. As indicated in a letter to Plaintiff from the Pro Se Office in the Southern District of New York, should Plaintiff wish to pursue claims regarding his treatment in prison "[p]lease note that FCI McKean is located in McKean County, in the Western District of Pennsylvania 28 U.S.C. § 118(c)." *See* April 26, 2001 Letter to Steven Hoffenberg from Deborah Davis; *see, e.g., Billiteri v. United States Board of Parole,* 541 F.2d 938, 948 (2d Cir.1976) (jurisdiction over petitioner's custodian required for a court to entertain an action).