Steven Jude **HOFFENBERG**, Plaintiff,

v.

**HOFFMAN & POLLOK**, Defendant.

No. 00 Civ. 3151 (RWS).

United States District Court,
S.D. New York.

Oct. 23, 2003.

Steven Jude Hoffenberg, Federal Medical Center Devens, Ayer, MA, pro se.

Hoffman Pollok & Pickholz, New York City, By: John L. Pollok, of counsel, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Hoffman & Pollok, now known as Hoffman Pollok & Pickholz LLP

("HPP") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of *pro se* plaintiff Steven Jude Hoffenberg ("Hoffenberg") and permanently enjoining Hoffenberg from filing any further frivolous lawsuits pursuant to 28 U.S.C. § 1651. For the reasons set forth below, the motion is converted into a motion for summary judgment and as such it is granted.

Hoffenberg has cross-moved under Rule 60(a) and (b) seeking recusal. This motion is denied as explained below.

## I. *Prior Proceedings in This Action*

Hoffenberg filed the complaint in this action (the "Complaint") on April 25, 2000, alleging diversity jurisdiction. Hoffenberg first alleges that HPP issued fraudulent billing to him for services that were never provided (Complaint at ¶¶ 16, 43–49). Second, he alleges that HPP fraudulently induced Hoffenberg to "write a letter about the over one million dollars advanced to HP by Pro Se"—an apparent reference to a letter dated May 29, 1996 in which Hoffenberg released all claims he had against HPP. Third, Hoffenberg alleges that HPP committed malpractice and breached their fiduciary duty not only throughout the course of HPP's representation of Hoffenberg (*id.* at ¶ 41), but also in connection with the monies set aside for legal services by the consent judgment (*id.* at ¶¶ 19–42) by taking a $450,000 set aside from a third party. They thus acted adversely to Hoffenberg, colluding with a third party and forcing Hoffenberg to enter into an adverse agreement for HPP's benefit. (*Id.*).

On September 9, 2001, an order was entered granting Hoffenberg an additional 45 days to serve HPP because Hoffenberg, based on a review of the court files, had failed to serve HPP within 120 days of the filing of the Complaint. On November 14, 2001, this Court dismissed the action be-cause of Hoffenberg's failure to serve HPP during the additional 45–day period granted in the September 9, 2001 order. Hoffenberg appealed this dismissal and on May 14, 2002, the Second Circuit vacated the dismissal and remanded the case to consider whether service was proper, having before it evidence of service. *Hoffenberg v. Hoffman Pollok & Pickholz, LLP,* 34 Fed.Appx. 18 (2d Cir.2002).

On May 20, 2002, Hoffenberg filed a motion to recuse this Court, which was denied on October 30, 2002. HPP withdrew its efficacy of service claim and moved to dismiss. On July 16, 2003, the motion was marked fully submitted.

## *The Underlying Litigation*

In early February 1993, the Securities and Exchange Commission ("SEC") commenced a civil action in the United States District Court for the Southern District of New York against Hoffenberg and others. *SEC v. Towers Fin. Corp.,* No. 03 civ. 0744, 1996 WL 406685, at *1 (S.D.N.Y. Mar.26, 1996). Simultaneously with the action brought by the SEC, a criminal investigation commenced against Hoffenberg and others for conspiracy to obstruct the SEC's investigation during 1991 and 1992 and for a multitude of other criminal violations involving the securities laws. *United States v. Hoffenberg,* Nos. 94 Cr. 213, 95 Cr. 321, 1997 WL 96563, at *6 (S.D.N.Y. Mar.5, 1997). On February 17, 1993, Hoffenberg, and others, agreed to a preliminary injunction that enjoined him from dissipating assets which was entered as an order in September 1993. Hoffenberg's living expenses and reasonable attorney's fees were exempted. 93 Civ. 0744(WK) ("Expenses Consent Order").

On October 25, 1994, Hoffenberg consented to entry of a final judgment against him and various entities he controlled with the Towers Trustee (the "Consent Judg-

ment"). The Consent Judgment was a product of negotiations between Hoffenberg and his counsel, HPP, the Trustee, counsel for the Trustee, and the SEC. Hoffenberg signed the Consent Judgment, which was "So Ordered" by the Honorable Prudence Abrams who was overseeing the Towers bankruptcy. The Consent Judgment provided that the defendants named, including Hoffenberg and Towers, agreed to pay $400,000,000 to the creditors of Towers, which represented the losses resulting from Hoffenberg's fraud, ultimately found to be $475,157,340. It further provided that prejudgment interest of $108,000,000, which constituted a portion of the funds restrained by the SEC, be transferred to the Trustee in partial satisfaction of the $400,000,000 judgment. The transfer of these funds to the Trustee was subject to approval by the SEC.

Under the terms of the Consent Judgment, HPP received $450,000 to be held in escrow for legal services which were subsequently to be provided ("Set Aside"). Part V of the Consent Judgment states:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Trustee shall transfer $450,000 to two interest-bearing Accounts at Republic National Bank with the law firm of Hoffman & Pollok, as signatories, $200,000 to one account ("Account A") and $250,000 to the other account ("Account B"). Both Accounts A and B shall be used solely for providing legal services to Hoffenberg by Hoffman & Pollok, and any amounts not spent on fees for legal services actually rendered shall be remitted to the Trustee. Funds in Account A may be used for legal representation (including attorneys' fees and expenses) of Hoffenberg in any criminal actions now pending against him. Hoffman & Pollok shall remit to the Trustee any unspent funds in Account B, plus related interest, within thirty (30) business days after the completion of all legal representation now pending against him in the Southern District of New York and the Northern District of Illinois. Hoffman & Pollok shall remit to the Trustee any unspent funds from account A within ten days after the termination of all civil litigation or twenty-four (24) months from the execution of this agreement whichever is earlier.

> Hoffman & Pollok shall provide the Trustee with monthly statements from the Accounts, along with Hoffman & Pollok's monthly invoices for legal services rendered to Hoffenberg. If the necessity arises, funds may be transferred from Account A to Account B and/or Account B to Account A.

> The Trustee shall review for reasonableness the monthly invoices within five (5) business days of receipt from Hoffman & Pollok and approve the invoices, in writing, in whole or in part.

> Hoffman & Pollok shall withdraw funds from the account and/or transfer funds between accounts only upon written authorization of the Trustee, but the Trustee shall not unreasonably withhold his authorization. Any and all disputes as to the reasonableness of any invoices shall be adjudicated by the United States Bankruptcy Court for the Southern District of New York.

Hoffenberg waived any right to appeal the Consent Judgment and attested that he entered into the Consent Judgment voluntarily, acknowledging that "no tender offer, promise or threat of any kind has been made by Trustee or any of their officers, agents, or representatives, in consideration of this Consent." (Consent Judgment at ¶ 4). He also attested that the consent embodied the entire understanding of all parties thereto. The Consent Judgment

was entered by the Honorable Whitman Knapp on November 2, 1994.

Hoffenberg pled guilty on April 20, 1995 to five criminal counts: (1) conspiracy to violate the securities laws by fraudulently selling securities; (2) mail fraud; (3) conspiracy to obstruct justice; (4) tax evasion; and (5) mail and wire fraud. *United States v. Hoffenberg,* 1997 WL 96563, at *1. Hoffenberg's motion to withdraw this plea was subsequently denied. *United States v. Hoffenberg,* 169 F.R.D. 267, 268 (S.D.N.Y.1996) and Hoffenberg was sentenced to 240 months in prison and required to make restitution of $475,157,340, representing the losses resulting from Hoffenberg's fraud at Towers as determined by the Bankruptcy Court. The Second Circuit affirmed this judgment on September 22, 1998. *United States v. Hoffenberg,* 164 F.3d 620 (2d Cir.1998). Hoffenberg is currently serving this sentence.

### Hoffman & Pollok's Representation of Hoffenberg

On April 19, 1993, Hoffenberg executed a formal retainer agreement with HPP for the purposes of his representation in both pending and future civil and criminal matters against him. (Complaint at ¶ 13). The initial retainer provided that HPP would receive one million dollars for its services. *Id.* This agreement was amended on May 25, 1993. Since Hoffenberg's assets had been frozen by the SEC two months earlier, the funding of the retainer was subject to SEC approval, which was granted.

During the first quarter of 1994, the initial retainer had been exhausted. Pursuant to the freeze order obtained by the SEC, the firm made an application to the SEC for the payment of additional funds. Each of the invoices sent to the SEC for approval contained a detailed breakdown of legal services, supported by HPP's worksheets and each attorney's handwritten time slips. From April until June 1994 these invoices were sent to the SEC, and payment was approved. Between July and August 1994, the attorneys for the Trustee in Bankruptcy for Towers, with the approval of the SEC, oversaw and approved the invoices as submitted.

HPP's invoices continued to be approved by a replacement trustee and his counsel. HPP's submitted invoices for February, March, and June 1996, totaling $51,341.96, were declined approval. However, this dispute was settled with approval from the Bankruptcy Court, and HPP returned $96,890.96 on December 20, 1996 to the Trustee. This represented the unused criminal portion of the $450,000 Set Aside allocated to them by the Consent Judgment.

On April 11, 1996, HPP moved to be relieved as counsel for Hoffenberg for all civil actions as a result of the irreconcilable conflict Hoffenberg had caused due to his allegations of "wrongdoing by the [HPP] firm, ineffective assistance of counsel, threatened law suits against our firm and requests to the United States Attorneys Office to investigate [HPP] for potential criminal prosecution." *SEC v. Towers Fin. Corp.,* Nos. 93 Civ. 0744, 93 Civ. 0810, 1996 WL 288176, at *2 (S.D.N.Y. May 31, 1996). HPP had previously been relieved as Hoffenberg's counsel in the related criminal cases, where Hoffenberg "accused his counsel of being ineffective in both the criminal and civil cases." On April 16, 1996, while HPP's withdrawal motion was pending, by letter to HPP dated April 16, 1996, Hoffenberg alleged that HPP committed malpractice in connection with its receipt of funds under the Consent Judgment, as well as contesting HPP's billings against the $800,000 retainer payment to HPP. However, on May 29, 1996, in a

letter to Bankruptcy Judge Abrams, Hoffenberg withdrew these claims, writing:

I accept the legal work provided by Hoffman & Pollock [sic]. I have no dispute with the work and money paid to Hoffman & Pollok. All work provided to me has been billed and paid for to date. Any and all claims made by me have been withdrawn. I am requesting everybody involved in our cases to understand that the dispute over money between Hoffman & Pollock [sic] and I have [sic] been settled.

This letter is referenced in the Complaint at ¶ 18 and is quoted and/or referenced by Magistrate Judge Peck and Judge Knapp in their decisions granting HPP's withdrawal. *SEC,* 1996 WL 288176, at *1.

On May 31, 1996, Magistrate Peck recommended the granting of HPP's withdrawal based on HPP's assertion that although "none of these allegations contained in these letters are even remotely true, they have created a gulf between Hoffenberg as client and Hoffman & Pollok as attorneys which cannot be bridged." *SEC,* 1996 WL 288176, at *2. In reviewing Magistrate Judge Peck's recommendation, Judge Knapp acknowledged that the Court had received letters both accusing HPP of ineffective assistance of counsel and insisting that all conflicts between the parties had been resolved before Magistrate Peck had recommended withdrawal. *SEC v. Towers Fin. Corp.,* Nos. 93 Civ. 0744, 93 Civ. 0810, 1996 WL 383238, at *1 (S.D.N.Y. July 8, 1996). In addition, after Magistrate Peck's recommendation, Judge Knapp received another letter from Hoffenberg "directly insisting that he [Hoffenberg] has no quarrel with Hoffman & Pollok, and that he wants them to continue to represent him in the civil cases." *Id.* Judge Knapp adopted Magistrate Judge Peck's recommendation in

its entirety on July 8, 1996, thereby relieving HPP from representation. *Id.*

### Additional Proceedings Initiated by Hoffenberg

On November 8, 1996, Hoffenberg filed a complaint against HPP with the Departmental Disciplinary Committee of the Appellate Division, First Department, alleging that he was forced to sign the Consent Judgment when there was no proof he owed any money to creditors. In addition, Hoffenberg claimed he was not provided with legal bills representing $1,225,000 in retainer fees, and that he had no quarrel with HPP's services as late as May 1996. He demanded an accounting. On April 17, 1998, HPP was informed that the Disciplinary Committee closed the file on the matter and would not take any further action.

In December 1999, Hoffenberg filed a motion to recuse this Court on the basis of a conflict of interest he feared would influence this Court's review of his 28 U.S.C. § 2255 attack on his two affirmed convictions. *Hoffenberg v. United States,* No. 00 Civ. 1686, 2000 WL 1523142, at *1 (S.D.N.Y. Oct. 13, 2000). This Court denied that motion twice, and the Second Circuit also dismissed Hoffenberg's appeal of these orders. In addition, the Honorable Thomas P. Griesa, in reviewing Hoffenberg's § 2255 motion, held that the "motion raised no constitutional grounds for attacking Hoffenberg's criminal convictions that could properly be construed as a § 2255 motion." *Id.* at *1 (*citing Hoffenberg v. United States,* No. 00 Civ. 1686 (S.D.N.Y. Mar. 6, 2000)). On August 8, 2000, Hoffenberg filed another recusal motion. This Court also held that Hoffenberg failed to raise an attack on his convictions that could be considered a proceeding under 28 U.S.C. § 455(d)(1) and acknowledged that "any appeal from this order, or from my order of January 28,

2000 denying his prior recusal motion, would not be taken in good faith."

In December 2000, Hoffenberg filed a legal malpractice action against Daniel Meyers, a court-appointed attorney who represented Hoffenberg from April 1996 to March 1997 following HPP's withdrawal. This Court granted Meyer's motion for summary judgment and dismissed Hoffenberg's amended complaint, holding that because the claim arose out of a criminal proceeding and Hoffenberg's conviction and sentence remained undisturbed, he could not assert his innocence and was not entitled to commence a malpractice action against his attorney. *Hoffenberg v. Meyers*, No. 99 Civ. 4674, 2002 WL 57252, at *1 (S.D.N.Y. Jan.16, 2002). The Court further noted that in this action, "Hoffenberg has simply repackaged prior unsuccessful arguments in an effort to avoid the consequences of his plea." *Id.* at *4.

## II. *Defendant's Motion*

### *Summary Judgment is the Appropriate Remedy*

■ Because of the complicated nature of these interlocking proceedings and the necessary factual submissions, the HPP motion under Rule 12(b)(6) will be converted to a motion for summary judgment under Rule 56. In upholding such a conversion, the Second Circuit explained:

> The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.... A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-

affidavits, depositions, etc. in support of and in opposition to a motion to dismiss. *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985). *See also Cook v. Hirschberg*, 258 F.2d 56, 57–58 (2d Cir. 1958); *Condon v. Local 2944, United Steelworkers of America*, 683 F.2d 590, 593–94 (1st Cir.1982); *Nat'l Family Ins. Co. v. Exch. Nat'l Bank of Chicago*, 474 F.2d 237 (7th Cir.1973).

■ In deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court's "consideration is limited to the factual allegations [of the complaint,] to documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Cahill v. O'Donnell*, 7 F.Supp.2d 341, 344 (S.D.N.Y.1998) (*quoting Brass v. American Film Tech. Inc.*, 987 F.2d 142, 150 (2d Cir.1993)). Although the Court may consider those documents attached to the complaint as exhibits, the papers submitted also refer to certain additional facts as set forth above.

■ When a motion is made under Fed. R. 12(b)(6), and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56," giving all parties reasonable opportunity to present pertinent material. *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner*, 937 F.2d 767, 773 (2d Cir.1991).

Under these circumstances, Hoffenberg will be given thirty (30) days, or more with good cause shown, to submit any additional facts which might cause a reconsideration of this decision.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see generally* 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Bickhardt v. Ratner*, 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997).

### The Statute of Limitations Bars Hoffenberg's Claims

■ Although Hoffenberg's complaint is to be read liberally, this does not prevent dismissal where the issue presented is one of law. *See 100,000 Victim Families Note Holders Owners of Sec. in Towers Fin. Corp. v. Schulte Roth & Zable*, 210 F.Supp.2d 286, 286–87 (S.D.N.Y.2001) (dismissing Hoffenberg's complaint for failing to establish standing or state a claim upon which relief could be granted after having been given an opportunity to cure his complaint); *Levin v. Chase Manhattan Bank Corp.*, No. 98 Civ. 7998, 1999 WL 669261, at *1 (E.D.N.Y. Aug.24, 1999) (dismissing pro se's complaint on basis of res judicata and failure to state a claim); *Brown v. Croce*, 967 F.Supp. 101 (S.D.N.Y.1997) (granting summary judgment where, although Court construed pro se's claim generously, pro se did not establish claim).

The determination of which state's laws apply in this action is governed by the Erie doctrine and choice of law principles. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since HPP, with its principle place of business in New York, is the partnership in this diversity action and all relevant actions took place in New York, New York's substantive law governs this action.

■ Under N.Y.C.P.L.R. § 213(8) and N.Y.C.P.L.R. § 203(g) (West 2002), the statute of limitations for a claim of fraud is six years from the commission of the fraud or two years from the time of discovery, whichever is later. *Phillips v. Levie*, 593 F.2d 459, 462 n. 12 (2d Cir.1979) ("§ 213(8) is not the sole statute involved in determining the New York limitation period for fraud actions." N.Y.C.P.L.R. § 203(f) [1]

---

1. N.Y.C.P.L.R. § 203(f) is N.Y.C.P.L.R. § 203(g)'s predecessor.

must also be consulted ... [w]hen 213(8) and 203(f) are read together, they have been construed to mean that in fraud actions suit must be commenced within six years after the commission of the fraud or within two years of the date the fraud was or should have been discovered, whichever is longer); *Hoff Research & Dev. Labs., Inc. v. Philippine Natl. Bank*, 426 F.2d 1023, 1025 n. 1 (2d Cir.1970) ("[T]hese sections together have been held to yield ... the six years from accrual or two years from discovery rule for actual fraud actions"); *Bader v. Fleschner*, 463 F.Supp. 976, 981 (S.D.N.Y.1978) (citing both § 213(8) and § 203(g)'s predecessor).

Hoffenberg has asserted that HPP issued fraudulent legal bills on June 26, 1996, (Complaint at ¶¶ 16–17, 43–44, 47, 49). He alleges that on that day he received a bill which included an entry for August 31, 1993 in the amount of $150,000 for which, he claims, legal services were never provided. (*Id.* at ¶¶ 54–48). This is the sole time entry which is asserted as a claim in the Complaint. Additionally, Hoffenberg alleges that all billing provided on June 26, 1996 was inflated. (*Id.* ¶¶ 43–49).

■ Reading the Complaint as liberally as possible, the claim of fraud accrued on August 31, 1993, the date of the commission of the wrongdoing, and expired on August 21, 1999, six years later. (*Id.* at ¶¶ 45–48); *see also Ackerman v. Nat'l Property Analysts, Inc.*, 887 F.Supp. 494, 504 (S.D.N.Y.1992) (time barring under the six-year statute of limitations fraud claims of all plaintiffs who invested in limited partnerships prior to December 19, 1985 where complaint was filed on December 19, 1991). Alternatively, the claim accrued upon Hoffenberg's discovery of the

inflated legal bills on June 26, 1996. (Complaint at ¶¶ 16–18, 43–44, 47 and 49). Therefore under the discovery method of CPLR § 203(g), the statute of limitations accrued on June 26, 1996 and expired on June 26, 1998, two years later. *Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978) (time barring claim under discovery method). Hoffenberg's claim of fraudulent billing is thus time-barred under N.Y. CPLR §§ 218(8) and 203(g).

■ Under N.Y. CPLR § 214(6), the statute of limitations for a claim of legal malpractice is three years. *De Carlo v. Ratner*, 204 F.Supp.2d 630, 634 (S.D.N.Y. 2002); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365, 366, 750 N.E.2d 67 (N.Y.Ct.App.2001). Claims of breach of fiduciary duty are also governed by a three-year statute of limitations. *Nobile v. Schwartz*, No. 99 Civ. 2375, 2000 WL 1753036, at *6 (S.D.N.Y. Nov.29, 2000); *see also Cooper v. Parsky*, 140 F.3d 433, 441 (2d Cir.1998) (stating claim for breach of fiduciary duty would be governed by a three year limitations period). The cause of action accrues and the limitations period starts running from the time the malpractice is committed, not when the client discovers it. *De Carlo*, 204 F.Supp.2d at 635; *Shumsky*, 96 N.Y.2d at 166, 726 N.Y.S.2d at 367, 750 N.E.2d 67.

■ Hoffenberg alleges that HPP committed malpractice and breach of fiduciary duty in connection with the Consent Judgment (Complaint at ¶¶ 20–21, 23–40), and throughout the course of their representation of Hoffenberg. (*Id.* at ¶ 41).[2] The

---

**2.** Although Hoffenberg alleges ineffective assistance of counsel in connection with his execution of the Consent Judgment, the allegations are in the nature of malpractice. To

the extent that these allegations are read as alleging ineffective assistance of counsel, this Court has already held that Hoffenberg's § 2255 motion, based on the same grievances

statute of limitations for malpractice and breach of fiduciary duty in connection with the Consent Judgment accrued from October 25, 1994, the date the judgment was entered and the time at which HPP committed the actions, and expired on October 25, 1997, at the termination of the three-year time limit. *See De Carlo*, 204 F.Supp.2d at 635 (time barring malpractice claim where alleged injury took place on November 10, 1998 but action was not filed until November 14, 2001); *Nobile*, 2000 WL 1753036, at *8 (time barring plaintiff's legal malpractice claim where alleged injury took place on March 7, 1995 and action was not commenced until August 16, 2000). Hoffenberg's legal malpractice claim and claim for breach of fiduciary duty are therefore time-barred.

Even if the statute of limitations is deemed not to run until July 31, 1996, when HPP was discharged, the three-year limitation period expired on July 31, 1999. Thus, under any circumstances, Hoffenberg's claim is time-barred under 214(6) and, therefore, is dismissed.

### The Consent Judgment is Entitled to Res Judicata Effect

■ Alternatively, Hoffenberg's claims of fraud and malpractice in connection with the Consent Judgment are barred by the doctrine of *res judicata. See Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634 (2d Cir.1987), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *see also Clark & Co., Inc. v. Acheson Indus., Inc.*, 532 F.2d 846 (2d Cir.1976), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). Under the doctrine of *res judicata* a final judgment on the merits of an action rendered by a court of competent jurisdiction "precludes the parties . . .

from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Amalgamated*, 825 F.2d at 639.

■ Consent judgments are accorded *res judicata* effect, as they are exercises of judicial power. *Amalgamated*, 825 F.2d at 639 ("The general rule is that a final consent decree is entitled to res judicata effect. This is so because the entry of a consent judgment is an exercise of judicial power, that is entitled to appropriate respect and because of the policy favoring finality of judgments.") (internal citations omitted); *Wallace*, 532 F.2d at 848. Thus, the Consent Judgment is entitled to *res judicata* preclusive effect, as it has been held to be a final judgment and was rendered by a court of competent jurisdiction.

*Res judicata* bars "all other claims arising out of the same transaction or series of transactions . . . even if based upon different theories or if seeking a different remedy." *Seavey v. Chrysler Corp.*, 930 F.Supp. 103, 106 (S.D.N.Y.1996) (*quoting O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981)); *cf. Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997) (barring not only "every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose") (*quoting SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir.1996)). A first judgment "will generally have preclusive effect only when the transaction or connected series of transactions at issue in both suits is the same, that is where the

alleged herein, did not make a substantial showing of the denial of any constitutional rights, was time-barred, and did not warrant a certificate of appealability. *Hoffenberg*,

2000 WL 1523142, at *3. Therefore, on this basis, Hoffenberg's claim of ineffective assistance of counsel is barred by *res judicata*.

same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Interoceanica*, 107 F.3d at 91.

Under the terms of the Consent Judgment, HPP received $450,000 to be held in escrow for legal services to be rendered and subsequently provided (Consent Judgment No. 94–8055A at ¶ V). This fee was a result of negotiations between Hoffenberg and his counsel, the Trustee in Bankruptcy for Towers, counsel for Towers and the SEC. This payment was placed in trust, subject to the Trustee's monthly review of HPP's billing invoices to determine their reasonableness, capped at $450,000 and subject to remittance for unused funds. Hoffenberg consented to this $450,000 Set Aside as he consented to the enforcement and implementation of the terms and conditions of the judgment.

■ In *In re Teltronics Servs., Inc.*, the court held that because the events constituting the asserted injury were identical to those asserted in the first action, the second suit was barred by *res judicata*. 762 F.2d 185, 193 (2d Cir.1985). Here, Hoffenberg asserts that HPP colluded with the Trustee to secure the $450,000 payment (Complaint at ¶¶ 36, 37), induced Hoffenberg to sign the Consent Judgment to secure its retainer (Complaint at ¶¶ 22, 23, 25), and thus acted in its own self-interest (Complaint at ¶¶ 11, 33, 42). However, it is these injuries that produced not only the disputed payment, but also led to his Complaint. Since the events are the same, "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *Teltronics*, 762 F.2d at 193.

In addition, the validity of this payment had already been negotiated in the previous action, a final determination made, and Hoffenberg consented voluntarily to its enactment, under which a portion of this capped payment was remitted to the Trustee, and Hoffenberg subsequently abided by the terms of the judgment. *100,000 Victim*, 210 F.Supp.2d at 286–87 (Hoffenberg alleges that the law firm violated 1994 Consent Judgment, thus giving rise to his complaint); *see also Amalgamated*, 825 F.2d at 638 (Holding consent judgment had preclusive effect where the judgment was entered into in order to avert dilution of voting power, costly litigation, and impediments to business affairs, the terms of which parties abided by). In addition, Hoffenberg asserted a claim against Schulte Roth & Zabel for violations of the same judgment, thereby evidencing Hoffenberg's reliance upon its validity. *100,000 Victim*, 210 F.Supp.2d at 286–87.

Hoffenberg participated in the fee negotiations, consented to the judgment as part of his cooperation with the Trustee in Bankruptcy and used the judgment affirmatively. *May v. Parker–Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1010 (10th Cir.1990) ("To allow the second suit to proceed as framed would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent."); *Amalgamated*, 825 F.2d at 638 (holding final consent judgment entitled to res judicata effect where parties to agreement would have been seriously impeded in the conduct of their business affairs had the purchase plan validity remained a litigable issue); *see also Wallace*, 532 F.2d at 849. The Consent Judgment has *res judicata* effect and precludes relitigation of Hoffenberg's claim.

*Res judicata* is also a bar to claims that could have been raised in the prior action. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414. In executing the Consent Judgment, Hoffenberg waived any right to appeal it, consented to the enforcement and implementation of the terms and conditions of the

judgment, and claimed his entry was voluntary. In his Complaint, Hoffenberg asserts that "HPP acted with fraud" in connection with their award of any additional monies for legal services to their collusion with the Trustee in Bankruptcy. Notwithstanding the fact that Hoffenberg asserted he entered into the Consent Judgment voluntarily, he also waived any right to appeal the judgment. Therefore, he could have challenged the judgment under grounds of fraud, but waived his right to do so. Accordingly, he is barred from raising that claim now. *See Amalgamated,* 825 F.2d at 642 (holding where a party chooses not to litigate when presented with the opportunity, he loses his right to bring another suit).

█ In addition, Hoffenberg has asserted he was fraudulently induced into entering into the Consent Judgment by HPP so it could receive the retainer. (Complaint at ¶ 22). In *Teltronics,* the court, in dismissing an action on the basis of *res judicata,* held that petitioner could not assert a new legal theory in order to defeat application of *res judicata* to his previous action. 762 F.2d at 193 (dismissing plaintiff's appeal of summary judgment where plaintiff had reasserted previous claims as well as ongoing interference with business affairs). Although Hoffenberg has alleged fraud and malpractice on the part of HPP, it is the specific provisions of the judgment to which Hoffenberg waived his right to appeal. He will not be permitted to relitigate those claims under the guise of fraud and malpractice. Thus, Hoffenberg's Complaint is precluded not only by *res judicata* but also because he waived his right to appeal the Consent Judgment.

### Further Litigation Without Permission is Barred

█ Not only does the doctrine of *res judicata* grow out of policies favoring pre-

vention of repetitious litigation and conservation of judicial resources, but also avoidance of vexation for parties and the judiciary. *See May,* 899 F.2d at 1009; *see also Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir.1993), *cert. denied,* 510 U.S. 902, 114 S.Ct. 278, 126 L.Ed.2d 229 (1993). In *Levin v. Chase Manhattan Bank Corp.,* the court dismissed *pro se's* complaint of fraudulent tax levies placed on plaintiff's account because the party proceeding *pro se* had filed a different, previously dismissed action against the same defendants. 1999 WL 669261, at *1. There, the court held that, as "[the] action is a transparent attempt by [pro se] to camouflage failed claims previously filed and dismissed," the claims were barred by *res judicata. Id.*

█ Courts have recognized the need to impose severe limitations on the opportunity of litigious individuals to pursue their vexatious and frivolous claims. *In re Anthony Martin–Trigona,* 9 F.3d 226, 227 (2d Cir.1993); *Pentagen Techs. Int'l Ltd. v. United States,* 172 F.Supp.2d 464, 468 (S.D.N.Y.2001) (enjoining plaintiff from filing any further litigations where plaintiff had filed eight previous claims); *Malley v. New York City Board of Educ.,* 112 F.3d 69 (2d Cir.1997); *Sassower v. Sansverie,* 885 F.2d 9 (2d Cir.1989). The court's power to enjoin such individuals is used to protect judicial resources, the finality of judgment and the integrity of the courts from those plaintiffs who abuse the court system and harass their opponents. *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1499 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994) (enjoining plaintiffs from bringing any further litigation based on the underlying facts in case, including future litigation in state courts). Enjoining a plaintiff from filing further lawsuits

is proper and necessary where plaintiff has been warned by the court before, threatened with sanctions if additional lawsuits are filed, does not abide by such warnings and the court finds that such behavior "demonstrate[s] that neither the lack of success of his actions nor the warnings of the district court will cause him to cease his abuse of the judicial process." *Malley,* 112 F.3d at 69 (affirming injunction where plaintiff exhibited such behavior); *see also Pentagen,* 172 F.Supp.2d at 474; *In re Martin–Trigona,* 795 F.2d 9, 12 (2d Cir. 1986).

■■■ Hoffenberg has brought many lawsuits relating to the underlying facts of this case. *Meyers,* 2002 WL 57252 (dismissing Hoffenberg's malpractice claims against counsel); *100,000 Victim,* 210 F.Supp.2d 286 (dismissing with prejudice Hoffenberg's claim for damages resulting from settlement of lawsuit); *Hoffenberg,* 2000 WL 1523142 (denying Hoffenberg's motion to recuse and time-barring his § 2255 motion); *United States v. Hoffenberg,* No. 94 Cr. 0273, 1995 WL 10840 (S.D.N.Y. Jan.12, 1995) (denying Hoffenberg's motion to reargue the denial of a motion for an order specifically enforcing the cooperation and plea agreement of September 23, 1993); *Hoffenberg v. Cohen,* 164 B.R. 719 (S.D.N.Y.1994) (dismissing appeal of denial of application to examine Chapter 11 Trustee under Bankruptcy Rule 2004). Hoffenberg has also been warned. *Hoffenberg,* 2000 WL 1523142, at *3 ("[A]ny appeal from this order, or from my order of January 28, 2000 denying his prior recusal motion, would not be taken in good faith."). *See also 100,000 Victim,* 210 F.Supp.2d at 289 ("The Court reminds Plaintiff that he may not assert baseless claims or abuse the judicial process through the instigation of frivolous or duplicative suits");

In *Pentagen,* the district court enjoined plaintiff from filing any further litigation without permission of the court where plaintiff had filed nine previous claims and ignored court warnings. 172 F.Supp.2d at 474. Similarly, in *Malley,* the court affirmed an injunction where plaintiff continued to file claims that were barred on *res judicata* and statute of limitations grounds. 112 F.3d at 69. There the court found no "barrier to a broader injunction in light of the warnings previously issued to Malley and of his persistence in pursuing the same meritless claims wherever his papers are accepted by a clerk of court." *Id.* Hoffenberg will be enjoined from filing any further litigation based on the underlying facts of this Complaint without prior approval by the Court.

## III. *Relief Under Rule 60(a) or (b) Is Inappropriate*

No grounds cognizable under Rule 60(a) or (b) have been set forth by Hoffenberg.

■■■ In his reply filed on July 3, 2003, he alleges grounds for recusal based upon an interest of a member of my wife's family in The New York Post which Hoffenberg sought to acquire after that interest had been terminated. There is no relationship to that interest in the proceedings described above, chronologically or in any other fashion.

Rule 60 relief is not warranted.

### *Conclusion*

For the reasons set forth above, summary judgment may be entered on notice dismissing the Complaint and barring Hoffenberg from further litigation arising out of these matters without Court permission. Leave is granted to Hoffenberg to submit any additional facts within thirty (30) days

and HPP is granted ten (10) days to reply to any such submissions.

It is so ordered.