Steven Jude HOFFENBERG, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 00 CIV. 1686(RWS).

United States District Court, S.D. New York.

Aug. 27, 2004.

Robin C. Smith, Brooklyn, NY, for Petitioner.

Honorable David N. Kelley, United States Attorney for the Southern District of New York, New York, NY (Rita Glavin, Assistant U.S. Attorney, Of Counsel), for Respondent.

## OPINION

SWEET, District Judge.

Petitioner Steven Jude Hoffenberg ("Hoffenberg" or "Petitioner") has moved this Court pursuant to 28 U.S.C. §§ 144 and 455 for an order recusing the undersigned from hearing Hoffenberg's motion to vacate his conviction pursuant to 28 U.S.C. § 2255. The United States as Respondent (the "Government") has opposed the motion, which is denied for the reasons set forth below.

### Prior Proceedings

As the asserted grounds for Hoffenberg's motion for recusal evoke the underlying facts and the legal determinations reached in numerous federal actions in

which Hoffenberg has been a party, the procedural history of all such actions, to the extent relevant here, is set forth below.

From 1974 until April 1993, Hoffenberg served as the chief executive officer, president and chairman of the board of the Towers Financial Corporation ("TFC"). *See United States v. Hoffenberg,* Nos. 94 Cr. 213 & 95 Cr. 321(RWS), 1997 WL 96563, at *1, 10 (S.D.N.Y. Mar. 5, 1997), *aff'd,* 164 F.3d 620, 1998 WL 695933 (2d Cir. Sept.22, 1998) (unpublished). Following a lengthy investigation, the Securities and Exchange Commission ("SEC") filed suit against Hoffenberg, TFC and other TFC officials in February of 1993, alleging that the defendants committed securities fraud through the circulation of false and misleading financial statements to investors regarding TFC's financial condition. *See Hoffenberg,* 1997 WL 96563, at *7; *United States v. Hoffenberg,* 908 F.Supp. 1265, 1268 (S.D.N.Y.1995); *see also S.E.C. v. Towers Fin. Corp.,* 205 B.R. 27, 28 & n. 1 (S.D.N.Y.1997) (collecting cases describing the alleged fraud involving TFC). The following month, in March of 1993, TFC filed for bankruptcy, *see Hoffenberg,* 1997 WL 96563, at *6, and TFC's collapse resulted in losses to investors totaling hundreds of millions of dollars. *See Hoffenberg,* 1997 WL 96563, at *6; *Hoffenberg,* 908 F.Supp. at 1266. On April 19, 1993, Hoffenberg executed a formal retainer agreement with the law firm of Hoffman & Pollok ("H & P") to represent him in both pending and future civil and criminal matters. *See S.E.C. v. Towers Fin. Corp.,* Nos. 93 Civ. 744(WK)(AJP) & 93 Civ. 810(WK)(AJP), 1996 WL 288176, at *2 (S.D.N.Y. May 31, 1996) (recounting history of H & P's retention by Hoffenberg), *adopted by, S.E.C. v. Towers Fin. Corp.,* Nos. 93 Civ. 744(WK) (AJP) & 93 Civ. 810(WK)(AJP), 1996 WL 383238 (S.D.N.Y. July 8, 1996).

Although not named in the complaint originally filed by the SEC against Hoffenberg and others, New York Post Publishing Inc., New York Post Realty Inc., and New York Post Co., Inc. were named as relief defendants in an amended complaint filed by the SEC on March 3, 1993, a move permitting the SEC to pursue funds Hoffenberg was alleged to have spent in attempting to purchase and run the New York Post (the "Post") in early 1993.

On April 19, 1994, Hoffenberg was indicted in the United States District Court for the Northern District of Illinois on various fraud charges, including mail fraud. *See Hoffenberg,* 1997 WL 96563, at *7. On April 20, 1994, he was indicted in the United States District Court for the Southern District of New York on numerous charges related to the SEC investigation and lawsuit, including mail fraud, securities fraud in connection with the sale of notes and bonds of TFC, unlawful conspiracy and obstruction of justice. *See id.* at *8; *United States v. Hoffenberg,* 169 F.R.D. 267, 269 (S.D.N.Y.1996). The indictment filed in this district under docket number 94 Cr. 213 was assigned to this Court, and the indictment pending in the Northern District of Illinois was subsequently transferred to the Southern District of New York and assigned to this Court under docket number 95 Cr. 321. *See Hoffenberg,* 1997 WL 96563, at *7–8.

On April 20, 1995, Hoffenberg pled guilty to four counts of a superseding information in connection with the indictment filed in the Southern District of New York, relating to charges of tax evasion, mail fraud, conspiracy to obstruct justice, and conspiracy to violate the securities laws. *See id.* at *8. He also pled guilty to one count of the indictment transferred from the Northern District of Illinois, a charge of mail fraud. *See id.* at *1.

During the criminal investigation and through the time of his guilty plea, Hoffenberg was represented by H & P. In April of 1996, however, Hoffenberg sought to discharge H & P as his attorneys in the criminal matter based on an "absolute conflict." *Towers Fin. Corp.*, 1996 WL 288176, at *1 (internal quotation marks omitted). H & P were relieved as counsel for Hoffenberg in the criminal action by an order of this Court on April 3, 1996. *See id.* H & P subsequently made a motion to be relieved as Hoffenberg's counsel in the pending TFC civil litigation, which motion was granted. *See id.* at *4; *see also Towers Fin. Corp.*, 1996 WL 383238, at *1.

On March 7, 1997, Hoffenberg was sentenced by this Court to twenty years' imprisonment, to be followed by a three-year term of supervised release. *See Hoffenberg*, 1997 WL 96563, at *1. Hoffenberg was ordered to pay a fine of $1 million and restitution of approximately $475 million, as well as a $50 special assessment on each of the five counts to which he had pled guilty. *See id.*

Hoffenberg thereafter appealed his criminal conviction and sentence, and on September 22, 1998, the Second Circuit affirmed both the conviction and the sentence. *See United States v. Hoffenberg*, 164 F.3d 620, 1998 WL 695933 (2d Cir. Sept.22, 1998) (unpublished).

On December 13, 1999, Hoffenberg submitted a letter motion to this Court requesting permission to file a petition pursuant to 28 U.S.C. § 2255 with another judge due to the possibility of conflict. Hoffenberg's request was denied on January 5, 2000 on the grounds that no proceeding was pending before this Court in Hoffenberg's case.

Hoffenberg sent a second letter motion on January 14, 2000 seeking my recusal, in which he stated that he could not read or interpret the January 5, 2000 handwritten denial of his first recusal motion. Hoffenberg's second letter motion was denied on January 28, 2000 on the grounds that there was no jurisdiction in this Court. Hoffenberg appealed the latter ruling to the Second Circuit, which dismissed the appeal without prejudice on March 17, 2000 for lack of a specific grant or denial of a certificate of appealability.

In the interim, Hoffenberg sent a second, identical handwritten motion to this Court's Pro Se Office, which assigned the case to the Honorable Thomas P. Griesa as a motion pursuant to 28 U.S.C. § 2255. In a detailed and thoughtful opinion and order, Judge Griesa held that Hoffenberg's motion raised no constitutional grounds for attacking his criminal convictions that could properly be construed as a Section 2255 petition. *See Hoffenberg v. United States*, No. 00 Civ. 1686(TPG), slip op. (S.D.N.Y. Mar. 6, 2000). Judge Griesa outlined the rules for filing and supporting collateral attacks to federal sentences, and stated that "the proper time to bring [a motion to recuse] is after [Hoffenberg] files an amended petition in compliance with this order and his case is reassigned to a District Judge." *Id.* at 2 n. 4. Hoffenberg was granted sixty days in which to file an amended Section 2255 petition raising constitutional claims, and subsequently granted a further extension setting the due date for the amended petition as July 26, 2000. The order granting the latter extension specified that a failure to submit an amended petition within the time prescribed would lead to the dismissal of Hoffenberg's case without prejudice. On July 27, 2000, no amended petition having been filed on its docket, case number 00 Civ. 1686 was transferred to this chambers.

On August 8, 2000, Hoffenberg filed a third motion seeking to have his case reassigned to a new judge based on allegations that my family and I purportedly had fi-

nancial dealings with the Post and that my recusal was necessary in light of the resulting financial conflict of interest. On September 15, 2000, Hoffenberg again submitted his recusal motion to this Court.

On October 13, 2000, this Court issued an opinion and order denying Hoffenberg's recusal motion for lack of jurisdiction. *See Hoffenberg v. United States,* No. 00 Civ. 1686(RWS), 2000 WL 1523142 (S.D.N.Y. Oct.13, 2000) (the "October Opinion"). After explaining that "a petitioner's motion to disqualify a judge due to a conflict of interest is viable only if the judge is presiding over a 'proceeding' in which his impartiality might be questioned," *id.* at *2, the October Opinion held that, as the one-year limitation period for filing a Section 2255 petition had expired and Hoffenberg had not filed such a petition, no proceeding was before the Court and the Court lacked jurisdiction to decide Hoffenberg's motion. *See id.* at *3.

Hoffenberg appealed the ruling reached in the October Opinion, arguing that he had filed a petition pursuant to Section 2255 and that this Court should recuse itself from consideration of the petition. On September 19, 2003, the Government filed a motion for remand with the Second Circuit, conceding that Hoffenberg had filed a Section 2255 petition on June 21, 2000, within the one-year limitation period. The petition had not been filed under the docket number assigned to Hoffenberg's habeas corpus action, case number 00 Civ. 1686, but under one of his criminal docket numbers, case number 95 Cr. 321. The Government took the position that Hoffenberg's case should be remanded to permit this Court to rule on the recusal motion in the first instance, in light of the now evident existence of a pending Section 2255 petition. In November 2003, the Second Circuit issued an order remanding this case.

Hoffenberg's June 21, 2000 petition to vacate his criminal conviction, brought pursuant to 28 U.S.C. § 2255, alleges various improper actions by H & P, including H & P's use of undue influence in advising Hoffenberg to plead guilty.[1] Hoffenberg's petition also asserts an ineffective assistance claim against defense attorney Daniel Meyers ("Meyers"), who had been appointed to represent Hoffenberg pursuant to the Criminal Justice Act after H & P had been relieved as counsel and who represented Hoffenberg at sentencing;[2] and contains additional allegations of ineffective assistance with regard to Gerald Bodell ("Bodell"), who represented Hoffenberg on the direct appeal from his criminal

---

**1.** On April 25, 2000, Hoffenberg filed a civil lawsuit against H & P, asserting claims of, *inter alia,* fraudulent billing and legal malpractice. This Court presided over Hoffenberg's civil action against H & P. *See Hoffenberg v. Hoffman & Pollok,* 288 F.Supp.2d 527 (S.D.N.Y.2003) (granting summary judgment to H & P and barring Hoffenberg from initiating further litigation based on the facts underlying the complaint without permission of the Court).

**2.** Hoffenberg filed a civil lawsuit against Meyers in the United States District Court for the Middle District of Pennsylvania, alleging that Meyers had committed legal malpractice by failing to take notice of an alleged conflict of interest between H & P and Cohen, relating to the $450,000 payment to H & P. The action was transferred to this district on June 28, 1999, and assigned to this Court on December 22, 2000. *See Hoffenberg v. Meyers,* No. 99 Civ. 4674(RWS), 2002 WL 57252, at *1 (S.D.N.Y. Jan.16, 2002), *aff'd as modified,* 73 Fed.Appx. 515 (2d Cir.2003) (unpublished). Hoffenberg moved to remove me from hearing the action on the grounds of a prejudice conflict on February 20, 2001, which motion was denied on March 19, 2001. By an opinion dated January 16, 2002, summary judgment was granted to Meyers and the amended complaint was dismissed. *See Hoffenberg,* 2002 WL 57252, at *3–5.

conviction.[3]

Hoffenberg brought the instant motion seeking to recuse me from considering his pending Section 2255 petition in March of 2004. The Government having submitted opposition to the motion, oral argument was heard on May 19, 2004, at which time the motion was deemed fully submitted.

### The Legal Standard for Recusal

Hoffenberg has moved for my recusal pursuant to 28 U.S.C. §§ 144 and 455.

Section 144 of Title 28 provides: Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Notwithstanding the wording of this section, the submission of an affidavit to the Court pursuant to this section will not lead to automatic recusal. *See Williams v. New York City Housing Auth.*, 287 F.Supp.2d 247, 248–49 (S.D.N.Y.2003) (citing *Nat'l Auto Brokers*

*Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978) (observing that the "mere filing of an affidavit of prejudice does not require a judge to recuse himself.")). Rather, the trial judge "must review the facts included in the affidavit for their legal sufficiency and not recuse himself or herself unnecessarily." *Williams*, 287 F.Supp.2d at 249 (citing *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir.1966)). To be legally sufficient under Section 144, an affidavit must show " 'the objectionable inclination or disposition of the judge' [and] it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' " *Rosen*, 357 F.2d at 798 (quoting *Berger v. United States*, 255 U.S. 22, 33–35, 41 S.Ct. 230, 65 L.Ed. 481 (1921)).

Subsection 455(a) of Title 28 provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This subsection "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir.2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)), *cert. dismissed*, —— U.S. ——, 124 S.Ct. 1652, 158 L.Ed.2d 263 (2004). Deciding whether there is an appearance of bias is "not mechanical," however, because " 'disqualification for lack of impartiality must have a *reasonable* basis.' " *In re Aguinda*, 241 F.3d 194, 201 (2d Cir.2001) (citations omitted and emphasis in original). The Second

---

**3.** On November 5, 2001, Hoffenberg, proceeding *pro se*, filed a lawsuit against Bodell alleging that Bodell had committed legal malpractice in his representation of Hoffenberg. *See Hoffenberg v. Bodell*, No. 01 Civ. 9729(LAP), 2002 WL 31163871, at *1 (S.D.N.Y. Sept.30, 2002). The complaint against Bodell was subsequently dismissed on the grounds that the malpractice claim was time-barred and failed to state a claim for relief. *See id.* at *8–9.

Circuit has "interpreted 28 U.S.C. § 455 as asking whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether 'a reasonable person, knowing all the facts,' would question the judge's impartiality." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992) (citations omitted)), *cert. denied*, —— U.S. ——, 124 S.Ct. 353, 157 L.Ed.2d 241 (2003). In other words,

> Section 455(a) requires a showing that would cause an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal. Where a case ... involves remote, contingent, indirect or speculative interests, disqualification is not required. Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited.

*Aguinda*, 241 F.3d at 201 (internal quotation marks and citations omitted).

While Subsection 455(a) addresses the appearance of impropriety, Subsection 455(b) "addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir.2000). Subsection 455(b) provides, in relevant part:

> [Any justice, judge, or magistrate judge of the United States] shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (2) Where *in* private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding ....

28 U.S.C. § 455(b).

Subsection 455(b)(1) may be read *in pari materia* with Section 144. *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir.1987) ("Courts considering the substantive standards of §§ 144 and 455(b)(1) have concluded that they are to be construed *in pari materia*."); *United States v. Ahmed*, 788 F.Supp. 196, 204 (S.D.N.Y.1992) ("Sections 144 and 455(b)(1) are construed *in pari materia*, and the test of legal sufficiency of a motion for recusal is the same under both statutes."), *aff'd*, 980 F.2d 161 (2d Cir.1992).

In general,

> [R]ecusal motions are committed to the discretion of the judge who is being asked to disqualify himself, who is enjoined to "weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are enti-

tled to an unbiased judge, not to a judge of their choosing."

*United States v. El–Gabrowny,* 844 F.Supp. 955, 958 (S.D.N.Y.1994) (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988) (citation omitted)). In other words, "recusal motions should not be allowed to be used as 'strategic devices to judge shop.'" *El–Gabrowny,* 844 F.Supp. at 958–59 (quoting *Lamborn v. Dittmer,* 726 F.Supp. 510, 515 (S.D.N.Y.1989)); *see also Lovaglia,* 954 F.2d at 815 ("[J]udges must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision.") (internal quotation marks and citation omitted and alterations in original). Indeed, a judge "is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Drexel,* 861 F.2d at 1312; *see also In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir.1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly ....").

***Discussion***

### I. Hoffenberg's Motion Is Timely

As an initial matter, both Section 144 and all subsections of Section 455 "are construed to require a timely application, which our Circuit reads as a 'threshold' issue—*i.e.,* one to be evaluated before matters of substance are reached." *El–Gabrowny,* 844 F.Supp. at 959 (quoting *Apple,* 829 F.2d at 333); *see also In re Int'l Bus. Mach. Corp.,* 618 F.2d 923, 932 (2d Cir.1980). In accordance with this requirement, a motion under either section must be made "'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Gil Enterprises, Inc. v. Delvy,* 79 F.3d 241, 247 (2d Cir.1996) (quoting *Apple,* 829 F.2d

at 333). According to the Second Circuit, the purpose of requiring that a recusal motion be promptly made is two-fold:

> First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*In re Int'l Bus. Mach. Corp.,* 45 F.3d 641, 643 (2d Cir.1995). In deciding whether a recusal motion has been made with sufficient speed, the court should consider factors such as whether:

> (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for the delay.

*Apple,* 829 F.2d at 334 (internal citations omitted).

Hoffenberg initially moved for my recusal on August 8, 2000, less than three weeks after he filed his Section 2255 petition. He again moved for my recusal on September 15, 2000. Following remand from the Second Circuit and the assignment of counsel pursuant to the Criminal Justice Act to represent him with regard to the instant motion, both in November of 2003, Hoffenberg once again moved for my recusal in March of 2004. In light of these circumstances and the fact that this case is still in the relatively early stages, and in the absence of any opposition from the Government in this regard, Hoffenberg's motion is deemed timely. *Compare Katzman v. Victoria's Secret Catalogue,* 939 F.Supp. 274, 277 (S.D.N.Y.1996) ("A delay of two months, such as here, has resulted in a finding of untimeliness where the

movant knew the facts on which the motion to disqualify is based, yet failed to file the motion while the court continued to hear and decide matters in the case.") (collecting cases).

## II. No Recusal Is Warranted

Hoffenberg's motion for my recusal is based on three arguments, each of which will be dealt with here in turn.

### A. Recusal Is Not Warranted Due to My Purported Service as Counsel in a Matter Unrelated to the "Matter in Controversy"

First, Hoffenberg alleges that my wife was an owner and assistant publisher of the Post and that I served as her attorney in negotiating the sale of the Post to Rupert Murdoch ("Murdoch") in 1976. Because the purported factual basis for Hoffenberg's underlying criminal case was the civil action brought by the Securities and Exchange Commission ("SEC") against, inter alia, Hoffenberg and various entities related to the Post, Hoffenberg claims that I should recuse myself pursuant to 28 U.S.C. §§ 455(a) and 455(b)(2) in light of my purported service as a lawyer "in the matter in controversy" prior to my appointment to the federal bench in 1978. 28 U.S.C. § 455(b)(2).

In support of his claim, Hoffenberg cites to several memoranda dating from 1976. (See Affirmation of Robin Smith ("Smith Aff."), Exhs. 4 & 5.) Three of the memoranda are addressed to my wife but have no connection, whether apparent or actual, to me; accordingly, they are irrelevant to the substance of Hoffenberg's claims.

The fourth and final memorandum, dated October 22, 1976, is on letterhead from the Post and indicates on its face that it is from Dorothy Schiff ("Schiff"), my mother-in-law, to files. In the context of recounting certain negotiations with Murdoch, the memorandum states that Schiff called her daughter (my wife) "to tell her I [Schiff] was in a quandary. I thought maybe our law firm would be sharper than KL & Co. She consulted her husband, who opted for KL & Co. and said that the buyer is the one who has to beware and the seller is simply interested in price and how it will be paid." (Smith Aff., Exh. 5 at 3.)

I was never retained by the Post in connection with negotiations with Murdoch or at any other time, and assuming the accuracy of the memorandum to files authored by Schiff, the facts described do not establish that I served as counsel to the Post or rendered any legal advice to the Post. I have no present recollection of my conversation with my wife reported in the memorandum.

 In any case, my recusal is not warranted here under either Subsection 455(a) or Subsection 455(b)(2). Subsection 455(b)(2) applies to actual rather than apparent conflicts of interest and requires disqualification where a judge "served as a lawyer in the matter in controversy." 28 U.S.C. § 455(b)(2). The phrase "matter in controversy" has been construed by the courts to mean either the action in which the motion for recusal is made or, more broadly, any action or activities in which claims, defenses or issues significantly related to those at stake in the pending action have been implicated.[4] Hoffen-

---

4. See, e.g., United States v. DeTemple, 162 F.3d 279, 284 (4th Cir.1998) (holding that a trial judge did not serve as a lawyer "in the matter in controversy" when, while still in private practice and five years before a criminal indictment issued against the defendant for bankruptcy fraud, he sent letters to the defendant on behalf of one of the defendant's unsecured creditors in an effort to collect a debt, since the creditor's debt "played no role in either the defense or the prosecution of [the defendant's] case"); Little Rock Sch. Dist. v.

berg's claim necessarily fails if the first, more restrictive interpretation of "matter in controversy" is adopted, and even under the latter reading, it fares little better. Pursuant to the more expansive interpretation of "matter in controversy," the significance of the relationship between the merits of the pending action and the purported basis for recusal is a crucial factor in determining whether the pending action and the allegations underlying the recusal motion involve the same matter in controversy. *See, e.g., Little Rock Sch. Dist. v. Armstrong,* 359 F.3d 957, 960–61 (8th Cir. 2004) (concluding that the trial judge's prior representation of another judge at a much earlier stage of the same case did not amount to participation in the same matter in controversy where that representation was restricted to the issue of the latter judge's disqualification and did not go to the merits of the case, the disqualification motion had been addressed under a separate docket number, and the issues in the present matter were wholly unrelated

to the prior representation); *United States v. DeTemple,* 162 F.3d 279, 285–86 (4th Cir.1998) (rejecting as too "remote" and "tangential" to constitute the same matter in controversy the connection between a criminal count against the defendant for attempted arson of real property and the trial judge's former law partner's representation of the bank involved in the sale of that real property to the defendant's parents, whom the prosecution argued were merely "straw purchasers" on the defendant's behalf, prior to the attempted arson).

The matter in controversy for purposes of Hoffenberg's recusal motion is Hoffenberg's criminal conviction and sentence, as challenged in his Section 2255 petition on the basis of Hoffenberg's claims of ineffective assistance of counsel. Hoffenberg has set forth no factual allegations indicating what relevance, if any, the Post may have for the matter in controversy apart from his suggestion that the purported factual basis for his criminal conviction was a civil

*Pulaski County Special Sch. Dist. No. 1,* 839 F.2d 1296, 1302 (8th Cir.1988) (affirming a trial judge's refusal to disqualify himself due to his former law partner's involvement in an earlier case which was closely related and historically connected to the action pending before him because the earlier involvement consisted of "submission of an *amicus* brief in a case involving, to a large extent, different issues and different remedies two decades ago," and holding that the phrase "matter in controversy" is limited to proceedings conducted under the same docket number of the case pending before the court); *In re Rodgers,* 537 F.2d 1196, 1198 (4th Cir.1976) (rejecting the notion that "matter in controversy" is restricted to the actual case before the court and holding that recusal was warranted where the defense asserted by the accused was likely to consist of evidence of matters in which the judge's former partner served as a lawyer); *see also Blue Cross & Blue Shield of R.I. v. Delta Dental of R.I.,* 248 F.Supp.2d 39 (D.R.I.2003) (collecting cases and concluding that the phrase "matter in controversy" should be read in a restrictive fashion "as

applying only to the case that is before the Court as defined by the docket number attached to that case and the pleadings contained there"); *United States v. Cleveland,* No. 96 Cr. 207, 1997 WL 222533, at *11 (E.D.La. May 5, 1997) (explaining that "a former representation should trigger the 'matter in controversy' requirement if the issues with which it dealt are put 'in issue' in the subsequent case in the sense that they need to be resolved by the judge who is presiding over the subsequent case" and concluding that recusal was not necessary where the judge's former law firm's representation was sufficiently unrelated to the issue before him); *In re Letters Rogatory from the Supreme Court of Ontario, Canada,* 661 F.Supp. 1168, 1174 (E.D.Mich. 1987) (concluding that "matter in controversy" should not be read "as narrow as the legal question in the current proceeding" and that disqualification under Section 455(b)(2) is required "where the proceeding relates in any broad sense to the suspect matter, even though such has not been made part of the current proceeding").

action that named both Hoffenberg and the Post as defendants. The Post is not a party to the instant proceeding nor was it a party in the criminal proceedings against Hoffenberg. Although Hoffenberg alleges that the Post was "a matter in controversy in the criminal prosecution of ... Hoffenberg" (Pl. Mem. at 5), he offers no facts indicating the nature of this alleged involvement, nor does he suggest how my conversation with my wife with regard to the Post's negotiations with Murdoch in 1976 might relate to the alleged involvement of the Post in the criminal proceedings in which Hoffenberg was a defendant in 1994. In fact, my mother-in-law's interest in the Post terminated on its sale to Murdoch in 1976. Finally, Hoffenberg has made no suggestion that the Post is in any way relevant to the claims he asserts in the underlying petition here. Accordingly, if the facts were as Hoffenberg has alleged, there still is no basis for my recusal under Subsection 455(b)(2). Recusal upon such a non-existent ground as that just discussed would constitute an abrogation of this Court's duty to preside over the instant action.

Similarly, even assuming, *arguendo*, that I had acted as counsel to my wife as Hoffenberg suggests nearly thirty years ago and nearly twenty years prior to Hoffenberg's conviction, my recusal is not required here under Subsection 455(a) due to the wholly remote nature of any purported connection between that representation and Hoffenberg's criminal conviction and his subsequent habeas petition. *Cf., e.g., Veneklase v. City of Fargo*, 236 F.3d 899, 901 (8th Cir.2000) (holding, in a case brought by picketers who had been arrested under the City of Fargo's anti-residential-picketing ordinance, that the representation by the circuit judge's former law firm of the victim of the plaintiffs' picketing in isolated, unrelated litigation going back six years before he took the bench "is

so far removed from a case in which actual bias may be found as to make even the appearance of bias improbable"). Under the circumstances set forth above, no reasonable person, knowing all of the facts, could reasonably question my impartiality in the instant case or doubt that justice would be done absent my recusal. *See Lovaglia*, 954 F.2d at 815; *Drexel Burnham*, 861 F.2d at 1313.

**B. Recusal Is Not Warranted Due to an Alleged Financial Interest in an Entity Unrelated to the Current Proceedings**

Hoffenberg's second argument for my recusal is that I or members of my family have or have had a financial interest in the Post or News Corp., the purported parent corporation of the Post, and that, due to this purported financial relationship as well as to the fact that Hoffenberg allegedly is or has been involved in a financial collection dispute with these entities, recusal is warranted pursuant to 28 U.S.C. §§ 144, 455(a) and 455(b)(4). Hoffenberg's argument is based in part on allegations contained in his August 8, 2000 motion for my recusal to the effect that he was in the process of collecting money as a result of a fraud claim against News Corp. related to his alleged purchase of the Post from Murdoch, who was then the majority interest holder in News Corp. My recusal is warranted, according to Hoffenberg, because my purported financial interest would be adversely affected by his attempts to recover money from News Corp. and because his success in recovering that money allegedly would be affected by his incarceration status, a subject at the center of his Section 2255 petition.

Subsection 455(b)(4) requires recusal where a judge "or his spouse or minor child residing in his household, has a finan-

cial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(4). Neither the Post nor News Corp. is a party to this proceeding, and even were either one a "subject matter in controversy," which, for reasons akin to those set forth above, neither is, I do not have and never had any financial interest in either entity, nor has my wife. My mother-in-law's interest terminated in 1976 as set forth above. *See also Hoffenberg v. Hoffman & Pollok,* 288 F.Supp.2d 527, 540 (S.D.N.Y.2003) (denying a motion for recusal in Hoffenberg's civil fraud and malpractice lawsuit against H & P and noting that "[Hoffenberg] alleges grounds for recusal based upon an interest of a member of my wife's family in the Post which Hoffenberg sought to acquire after that interest had been terminated. There is no relationship to that interest in the proceedings described above, chronologically or in any other fashion."). Moreover, Hoffenberg's suggestion that I, my wife, or my mother-in-law would have been adversely affected by his attempts to recover money from News Corp. and that the success of his attempts is somehow affected by his incarceration status is without any basis in fact and there is no basis set forth for the speculation that I, my wife, or my mother-in-law "could be substantially affected" by the outcome of the pending proceeding. 28 U.S.C. § 455(b)(4).

In light of the facts just set forth, Hoffenberg's claim also fails under Subsection 455(a), since no reasonable person, knowing and understanding these facts, would conclude that my recusal is called for here. Hoffenberg's claim that my recusal is warranted under Section 144 and Subsection 455(b)(1) is similarly wanting, as he has set forth no facts suggesting that this Court harbors a personal bias or prejudice concerning him or an adverse party in this proceeding stemming from any purported financial interest in the Post or News Corp.[5]

### C. Recusal Is Not Warranted Due to this Court's Prior Legal Rulings

Finally, Hoffenberg alleges that my impartiality might reasonably be questioned in this Section 2255 proceeding because of certain prior rulings by this Court in the civil lawsuit filed by Hoffenberg against the law firm of Hoffman & Pollok. *See Hoffenberg v. Hoffman & Pollok,* 248 F.Supp.2d 303 (S.D.N.Y.2003) (dismissing Hoffenberg's claims for fraud and malpractice as time-barred but granting leave to file an amended complaint with regard to claims of fraudulent inducement); *Hoffenberg,* 288 F.Supp.2d at 535–37 (rejecting Hoffenberg's arguments that his fraudulent billing claims were timely and dismissing his claims); *see also Hoffenberg v. Hoffman & Pollok,* 296 F.Supp.2d 504, 505–06 (S.D.N.Y.2003) (denying Hoffenberg's motion for reconsideration of the ruling that his claims were time-barred). Specifically, Hoffenberg argues that this Court's ruling that Hoffenberg's fraudulent billing claims were barred by the applicable statute of limitations was based on a "contortion of the facts so obviously aimed at precluding Mr. Hoffenberg from

---

**5.** The recusal sought by Hoffenberg pursuant to Section 144 fails for the additional reason that Hoffenberg has not submitted an affidavit of bias on this motion, nor has his attorney submitted a certificate of good faith, as required by that section. *See* 28 U.S.C. § 144. These procedural prerequisites are strictly observed, and deviation from the statutory requirements provides sufficient grounds for denial of a motion for recusal brought pursuant to Section 144. *See Bin–Wahad v. Coughlin,* 853 F.Supp. 680, 683 (S.D.N.Y.1994); *United States v. Occhipinti,* 851 F.Supp. 523, 526 (S.D.N.Y.1993).

his day in Court" (Pet. Mem. at 11) and a misapplication of the fraud statute, and that, accordingly, my recusal is called for pursuant to 28 U.S.C. § 455(a).

 As this Court has had previous occasion to state in ruling on a separate motion for recusal brought by Hoffenberg, *see Hoffenberg v. Hoffman & Pollok,* No. 00 Civ. 3151(RWS), 2002 WL 31444994, at *2 (S.D.N.Y. Oct.31, 2002), adverse judicial rulings, whether over the course of the same proceeding or in other litigation involving the party who is seeking recusal, do not constitute a basis for recusal. *See, e.g., Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (holding that recusal is not warranted merely because of repeated judicial rulings against the movant); *United States v. Arena,* 180 F.3d 380, 398 (2d Cir.1999) (same); *United States v. Daley,* 564 F.2d 645, 651 (2d Cir.1977) (noting that "[t]here may be instances in which a judge's behavior during prior judicial proceedings can demonstrate sufficient friction between the judge and the complaining party to support a finding of bias" but concluding that "such was certainly not the situation in this case" where there were no specific allegations that the trial judge conducted either of the prior proceedings "in a manner which even faintly suggested bias"); *see also Int'l Bus. Mach.,* 618 F.2d at 929 ("A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest."). Accordingly, this Court's prior rulings with regard to Hoffenberg's claims against H & P are not, in and of themselves, a sufficient basis for my recusal. As Hoffenberg has not specified how the Court "contorted" the facts in making those rulings, or, indeed, identified anything other than the same legal arguments for timeliness raised in the earlier action as grounds for his current claim, he has failed to set forth any facts based on which a reasonable person might question my impartiality. Under these circumstances, I may not, *see Drexel,* 861 F.2d at 1312, and shall not recuse myself from these proceedings.

### Conclusion

As Hoffenberg has failed to establish grounds for my recusal for the reasons stated above, his motion is denied.

It is so ordered.